347 So.2d 692 (1977)
STATE of Florida, Appellant,
v.
Ernest Eugene GRIFFIN, Appellee.
No. CC-372.
District Court of Appeal of Florida, First District.
June 10, 1977.
Rehearing Denied July 11, 1977.
*693 Robert L. Shevin, Atty. Gen., and Patti Englander, Asst. Atty. Gen., for appellant.
Richard W. Ervin, III, Public Defender and Michael M. Corin, Asst. Public Defender, for appellee.
RAWLS, Judge.
The State of Florida appeals an order dismissing an information by which it had charged Griffin with the crime of sales of controlled substances. The order dismissed the information upon the basic ground that Griffin was deprived of "speedy prosecution".
The record and testimony adduced at the hearing on the motion to dismiss the information reveal that Jackie Smith and Robert Drummond were vice squad undercover agents and that Agent Smith was present when Agent Drummond purchased a controlled substance from Griffin on or about June 4, 1975. Within 60 days after the sale on June 4, 1975, Agent Drummond was taken out of his undercover capacity and placed in open and non-secretive police work. The officers in charge of the vice squad decided to continue Agent Smith in an undercover capacity and to assign her to a drug conspiracy investigation. She continued as an undercover agent in the drug conspiracy investigation until January, 1976. The information charging Griffin with sales of controlled substances was drawn on March 30, 1976, and he was arrested on May 4, 1976. The parties stipulated and agreed that during the period of June 4, 1975, until May 4, 1976, Griffin resided at the home of his mother, and he made no effort to conceal himself nor his identity from the Jacksonville Sheriff's office.
In the order of dismissal the trial court found, inter alia:
"... That the apparent reason for the 11 months delay between the alleged offense and the actual arrest was concern on the part of the Vice Squad that a more timely arrest of the defendant [appellee] might result in some potential jeopardy to Agent Smith who was working undercover in another unrelated drug conspiracy investigation.
"That the supervising vice squad officers knew that Agent Smith had been present at the sale by defendant in June, 1975, and with that knowledge they decided to use Agent Smith as an undercover agent in a drug conspiracy investigation which would take months to complete. That this was a conscious choice and was fraught with possible jeopardy to either or both cases in which Agent Smith worked.

*694 "That defendant could have been arrested solely on the testimony of Agent Drummond and there was no legal necessity to delay 11 months so that Agent Smith would be available to bolster Drummond's testimony against the defendant.
"That as a result of the delay of 11 months from the date of the alleged offense to the date of the defendant's arrest the defendant is prejudiced in that he has no recollection of what he was doing or where he was nor has he been able to locate any witnesses who can speak as to his actions and whereabouts on the date of the alleged crime..."
The factual situation evaluated by the United States Circuit Court of Appeals in Ross v. United States[1] is analogous to those facts reviewed by the trial judge in the instant case. In reaching its decision of reversal, the majority of the Ross court emphasized that a balance must be struck between the interest of the citizen who is ultimately accused and the substantial public interest in effective police work to detect violations of the law.
In Dickey v. Florida,[2] which involved the issue of defendant's impairment of a fair opportunity to defend at trial, Chief Justice Burger stated: "... the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial."
The Ross case has been welcomed by legal scholars who seem to be in accord with the proposition that the prejudice to his defense which a defendant suffers due to a post-arrest delay is oftentimes indistinguishable from that which pre-arrest delay may occasion. As observed by Professor Anthony G. Amsterdam in his law review treatise entitled "Speedy Criminal Trial: Rights and Remedies",[3] in a quite literal sense the Sixth Amendment[4] right to a speedy trial has today become, to borrow the words of a celebrated procrastinator, more honored in the breach than in the observance.[5]
However, since the instant issue involves a pre-arrest delay on the part of the state, we harken to the principle of law espoused by the United States Supreme Court in United States v. Marion[6] and its progeny which apparently hold that one who has been accused is entitled to the Sixth Amendment guarantee of a speedy trial, but one not so accused must resort to due process provisions for any federal constitutional redress against a procrastinating sovereign.[7] Logically, speedy trial should mean a trial with speed  from the moment prosecuting authorities have completed their investigation and have reached the conclusion that a criminal citizen is aloose upon the public. But, as pointed out in footnote 8 in Marion, supra, at that time most of the federal courts of appeal recognized that the Sixth Amendment right is only available after a prosecution has been formally initiated. Thus, other than philosophical guidelines, the "speedy trial" decision of the United States Supreme Court (possibly with the exception of Dickey v. Florida, supra) are of little value to resolution of the instant issue.
*695 The District of Columbia Circuit Court of Appeals in United States v. Jones[8] revisited the rule as pronounced in Ross, supra, and analyzed in depth the various factors to be considered, not only in pre-arrest situations, but also Sixth Amendment speedy trial requisites. In explicating the Ross rule, the court in Jones stated:
"... A general pattern emerges from these cases: in each case, the police knew the whereabouts of the accused-to-be but postponed arresting him, despite his availability, in order to protect an informer or avoid revealing the identity of an undercover agent who had not yet `surfaced'. Mindful of the fact that such undercover investigations often continue for many months while alleged violators remain unaware that they will be charged, the Ross court cautioned that:
[i]t is always to be remembered that the [delay] is a conscious act on the part of the police. That alone does not condemn it, because the Department is motivated solely by a purpose to enhance its effectiveness in the public interest. But the Constitution contemplates a separate interest in fair procedures for the citizen faced with the loss of his liberty by reason of criminal charges. When interests of this nature impinge on each other, as they have a way of doing, they must be accommodated. A balance must be struck, if one or the other is not to be sacrificed completely.

Ross v. United States, 121 U.S.App.D.C. at 236, 349 F.2d at 213, quoted in Robinson v. United States, 148 U.S.App.D.C. at 62, 459 F.2d at 851."
As the able trial judge concluded, we find that the shoe molded on the Ross last fits the instant case. The state says that United States v. Marion, supra dictates reversal. We do not so find. Marion primarily involved the question of Sixth Amendment applicability to a post-arrest situation which factually disclosed an "on going" investigation prior to indictment. However, the court in Marion did observe that the due process clause may provide a basis for dismissing an indictment upon a showing that prosecutorial delay has prejudiced the defendant.
The authorities appear to agree, and we so hold that a pre-arrest due process deprivation cannot be quantified into a specific number of days.[9] Many factors must be taken into consideration; among them are the reason the government assigns to justify the delay and the judicial discretion of the trial court in evaluating the circumstances.[10] Prejudice to the accused is the most important factor in evaluating the question of due process deprivation. No matter how long the delay, if within the period of the statute of limitations, unless the accused can demonstrate that he has been prejudiced thereby, the delay, per se, will not justify dismissal.
We are not solely confronted with federal due process standards. The Constitution of the sovereign State of Florida explicitly states: "No person shall be deprived of life, liberty, or property without due process of law... ."[11] In seeking to achieve the ultimate goal of fairness as contemplated by the state's due process clause, the Florida Supreme Court has adopted the enlightened Florida Rules of Criminal Procedure, incorporating therein specific maximum mathematical time periods in applying the state's constitutional speedy trial provision for an accused and liberal criminal discovery proceedings in order to reach the goal of a criminal trial upon fact  not surprise.[12] *696 Florida due process standards in many instances exceed federal standards as defined by the United States Supreme Court.
We do not distill the time within which prosecution will be required to any given maximum number of days after the state has fully completed its investigation and is prepared to charge a defendant. Such time period as stated above must be weighed in the light of due process standards, i.e., fairness, in instances where the accused claims a foul, i.e., prejudice, by reason of the state's inaction. And, as in any other factual contest, the alleged "foul" must be resolved by the referee, i.e., trial court, upon competent substantial evidence.
In the instant case the learned trial judge found "that as a result of the delay of 11 months from the alleged offense to the date of the defendant's arrest the defendant is prejudiced in that he has no recollection of what he was doing or where he was nor has he been able to locate any witness who can speak as to his actions and whereabouts on the date of the alleged crime." Prejudice to the defendant, then, as a result of prosecutorial delay has been demonstrated by competent substantial evidence.
AFFIRMED.
BOYER, C.J., and SMITH, J., concur.
NOTES
[1] Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). We recognize that the Ross decision and its progeny were based upon the supervisory power which that court had over criminal trials in its circuit and that accordingly it is not a mandatory precedent for the case sub judice. However, its teachings are instructive and furnish a guide for our considerations sub judice.
[2] Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).
[3] 27 Stanford L.Rev. 525 (Feb., 1975).
[4] Sixth Amendment, U.S. Constitution.
[5] Shakespeare, Hamlet, Act I, Scene IV, line 16.
[6] United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
[7] Fifth and Fourteenth Amendments, U.S. Constitution. Cf. Dickey v. Florida, supra, wherein the court "incorporated" or "absorbed" into the Fourteenth Amendment the "speedy trial" provision of the Sixth Amendment.
[8] United States v. Jones, 173 U.S.App.D.C. 280, 524 F.2d 834 (1975).
[9] It is noted that our sister court in State v. Freeman, 276 So.2d 546 (Fla. 4th DCA 1973), declined to apply the Ross rule to a 39-day factual situation, and had we such facts in the instant case, we would have likewise held. Their observation as to the inflexibility and inviability of the Florida statute of limitations, in our opinion, cannot stand either state or federal constitutional muster.
[10] Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
[11] Article I, Section 9, Florida Constitution (1968).
[12] 33 Fla. Stat.Annot., Author's comment states: "Rule 3.220 is perhaps the most comprehensive attempt in America to consolidate available and new discovery devices in criminal practice... ."