359 So.2d 39 (1978)
STATE of Florida, Petitioner,
v.
Terry W. ROBBINS, Respondent.
No. 78-544.
District Court of Appeal of Florida, Second District.
May 31, 1978.
*40 Robert L. Shevin, Atty. Gen., Tallahassee, and C. Marie King, Asst. Atty. Gen., Tampa, and Larry Hart, Asst. State Atty., Clearwater, for petitioner.
Charles J. Morachnick, Seminole, for respondent.
RYDER, Judge.
The State petitions for certiorari to review the circuit court's affirmance of the speedy trial discharge granted respondent by the county court. Respondent's discharge was predicated upon the court's conclusion that the speedy trial period began to run when respondent was originally detained, although he was released shortly thereafter with no formal charge being lodged against him at that time. Because we conclude that this analysis was incorrect, we grant the writ.
Respondent was charged by information filed August 3, 1977 with the misdemeanor of fleeing a police officer on June 1, 1977. On September 14, 1977 he filed his motion for discharge under the speedy trial rule, which was granted.
The pertinent facts of this case are as follows:
Officer David M. Glidden, in uniform, was on routine patrol in a marked police cruiser when he observed respondent's automobile stopped at the end of a dead end street with its motor running and headlights burning at 3:00 a.m. on June 1, 1977. Because the vehicle was in an area where another officer had just received a complaint, Glidden reported the license tag by radio before approaching the car. Officer Glidden found respondent slumped down sideways in the front seat of the car. The officer awakened respondent, asked for identification, and was told by respondent that the CB microphone in respondent's hand was his identification. Glidden had respondent turn off the engine of his vehicle and again inquired as to identification. Respondent, thereupon, started up his vehicle and drove the car into a nearby parking lot of an apartment building. Officer Glidden walked over to respondent's car and again asked for respondent's driver's license. Respondent handed the officer a dollar bill from his wallet and asked if that was enough identification. Patiently, Officer Glidden had respondent turn off his engine and requested identification but, again, received none.
At this juncture, Officer Glidden returned to his police cruiser and radioed for a backup. During this communication, Glidden glanced toward respondent and observed that respondent had once more started his car and this time was driving straight at Officer Glidden, who was standing behind the open door of his cruiser. *41 Glidden jumped into his cruiser and closed the door to prevent respondent from striking him or the door. Respondent's car passed within one foot of the police vehicle, although there was at least thirty feet of right of way for respondent's use.
Officer Glidden pursued respondent with his blue light flashing, again stopped the respondent, drew his weapon and ordered respondent to shut down his engine and to exit the car. Respondent did neither, but rather grabbed for the officer's arm as respondent's car moved forward. Glidden pulled away and was knocked off balance, causing his gun to fire a round through the left rear window of respondent's car. Respondent again drove off. Glidden made another radio transmission concerning the latest turn of events and continued the chase. Respondent's car was stopped sometime thereafter by another pursuing police officer. Glidden then arrived at the scene.
Glidden did not issue a citation or inform respondent that he was under arrest. Neither did the officer who had finally stopped respondent. However, respondent was handcuffed momentarily.
An ambulance was called, as respondent related he had been shot and a small amount of blood was visible on his shoulder. Respondent was taken to a hospital for his alleged injury, however, he was allowed to leave the hospital after examination and treatment. A Detective McReynolds spoke with respondent at the hospital and again later in the day when respondent went to the police department to obtain his wallet, which had already been released to respondent's wife. Respondent was not arrested or detained at that time. Respondent was not aware of any criminal charge arising from the incident until August.
Fla.R.Crim.P. 3.191(a)(1) (the speedy trial rule) provides in pertinent part:
Except as otherwise provided by this Rule, every person charged with a crime by indictment or information shall without demand be brought to trial within 90 days if the crime charged be a misdemeanor... The time periods established by this section shall commence when such person is taken into custody as a result of the conduct or criminal episode giving rise to the crime charged.
The issue before us now is whether respondent was "in custody" within the meaning of the speedy trial rule. We feel he was not. When an accused is stopped and temporarily detained, but is not placed in a cell or fingerprinted, and is allowed to leave without being placed under arrest, he has not been placed "in custody" within the meaning of Fla.R.Crim.P. 3.191(a)(1), although he has been placed "in custody" for purposes of the Miranda requirements. State ex rel. Dean v. Booth, 349 So.2d 806 (Fla. 2d DCA 1977). See also Snead v. State, 346 So.2d 546 (Fla. 1st DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977).
Although respondent was temporarily detained on the night of the offense, he was not formally arrested or incarcerated. Moreover, it appears the police were merely attempting to establish the cause for respondent's bizarre behavior and, acting out of humanitarian reasons, were patiently attempting to keep respondent from injuring himself. This is further supported by the fact that once respondent was taken to the hospital for medical examination and treatment, the police indicated no further custodial interest in him and he was allowed to leave without further ado.
The fact that the police had probable cause to arrest respondent at the time of his temporary detention and transport to the hospital does not change the result. The police may delay an arrest beyond the completion of their investigation, although an accused might be entitled to dismissal on the basis that he has been denied due process if he can demonstrate that he has been prejudiced by the delay. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Griffin, 347 So.2d 692 (Fla. 1st DCA 1977).
The petition for writ of certiorari is granted. The circuit court's order affirming the county court's order discharging respondent is quashed. The cause is remanded with directions to vacate the order *42 discharging respondent and for further proceedings consistent with this opinion.
BOARDMAN, C.J., and OTT, J., concur.