On Motion for Rehearing En Banc

PER CURIAM.
Motion for rehearing en banc was granted to consider the possible conflict between the panel decision and the prior decision of this court in Dade County v. Hospital Affiliates International, Inc., 378 So.2d 43 (Fla. 3d DCA 1979) (see n. 5 at 46). Fla.R. App.P. 9.331(a), (c). After argument, we find no conflict and therefore deny the motion for rehearing en banc.
Because we deem it to be of great public importance, Fla.R.App.P. 9.030(a)(2)(A)(v), we certify the following question to the Supreme Court of Florida:
Does a county bear a legal and financial duty to provide post-emergency medical care to indigent residents of the county? SCHWARTZ, Chief Judge (dissenting).
In my judgment, the panel’s sweeping conclusion that every Florida county — presumably including those which do not maintain hospitals or other medical facilities — is responsible for the hospital expenses of its indigent residents is directly contrary to a prior decision of this court, and, more important, is totally unjustified by the statutory provisions cited by the panel or by any other enactment of the legislature.
In Dade County v. Hospital Affiliates International, Inc., 378 So.2d 43 (Fla. 3d DCA 1979), we squarely held that because “otherwise indigent” patients were not county prisoners at the time of their treatment, there was no basis for holding Dade County liable for their hospital expenses. At 378 So.2d 46, n. 5, the court specifically rejected the contention that, as a matter of “public policy,” we should extend the coun *234 ty’s responsibility “beyond that imposed by Sec. 951.23 [relating to county prisoners].” I do not believe that the present decision can be reconciled with that one.
Nor do the provisions invoked in the panel opinion indicate that Hospital Affiliates was incorrectly decided. It seems clear, for example, that article XIII, section 3 of the 1885 Constitution, which in essence became an ordinary statute by virtue of article XII, section 10, Florida Constitution (1968), see Kirk v. Brantley, 228 So.2d 278 (Fla.1969); In re Advisory Opinion to the Governor, 225 So.2d 512 (Fla.1969), was repealed by numerous subsequent reviser’s bills, none of which preserved it as a part of the Florida statutes. Sec. 11.2422, Fla. Stat. (1981); Shuman v. State, 358 So.2d 1333 (Fla.1978).
Even if this is not the case and article XIII, section 3 remains extant, it nonetheless may not be given the effect ascribed to it by the court. The section states only that the counties shall act “in the manner prescribed by law;” it is thus not self-executing and requires specific supporting and enforcing legislation. Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla. 1st DCA 1962), cert. denied, 149 So.2d 41 (Fla.1963); Oak Park Federal Savings & Loan Association v. Village of Oak Park, 54 Ill.2d 200, 296 N.E.2d 344 (1973). When Cleary v. Dade County, 160 Fla. 892, 37 So.2d 248 (1948), cited by the court, was decided, such a statute indeed existed as section 125.01(4), Florida Statutes, which provided that one of the duties of the Board of County Commissioners was “[t]o have care and provide for the poor and indigent people of the county.” On this basis, the Supreme Court held in Cleary:
[The county] has both the authority and the duty to care for the indigent, sick and poor in all of Dade County by virtue of the statute above referred to and by the provisions of Section 3 of Article XIII of the Constitution of Florida, F.S.A. ...
37 So.2d at 251. But section 125.01(4) was deleted in 1959 and replaced by what is now section 125.01, Florida Statutes (1981). This section grants counties powers, but imposes no duties. Insofar as is here relevant, the statute provides:
125.01 Powers and duties.—
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
⅝ ⅜ ⅝ ⅝ ⅜: ⅝:
(e) Provide hospitals, ambulance service, and health and welfare programs.
The significance of the distinction was made clear by the Supreme Court itself in Cleary in dealing with the status of the City of Miami at that time:
This section of the charter empowers or authorizes the City “to provide for the care, support and maintenance * * * of sick, aged, insane or indigent persons” and does not expressly make same an obligation or duty of the City.
37 So.2d at 251. The present state of the statutory law with respect to Dade County — and every other — is identical. Even assuming their viability, there is no enabling legislation enforcing the precatory provisions of article XIII, section 3 of the 1885 Constitution, and thus no basis for imposing such a duty on the County.
The other statutes upon which the panel relies may be briefly disposed of. The expression of intent recited in section 154.-302, Florida Statutes (1981) must be read in the context of the entire chapter, which deals only with the responsibility, under certain limited circumstances, of the county of an indigent’s residence for medical care rendered in another county. See, St. Mary’s Hospital v. Okeechobee County Board of County Commissioners, 442 So.2d 1044 (Fla. 4th DCA 1983);[1] Shands Teaching Hospital & Clinics of University of Florida v. Council of City of Jackson *235 ville, 398 So.2d 907 (Fla. 1st DCA 1981); Tallahassee Memorial Regional Medical Center v. Lewis, 399 So.2d 106 (Fla. 1st DCA 1981). The quotation at p. 233 thus expresses the legislative policy only that, in that situation, the county where the indigent lives should bear the financial burden. It has nothing whatever to do with a supposed obligation by all counties to care for all of their resident indigents.
Finally, section 155.16, Florida Statutes (1981) is part of Chapter 155, which does not deal with county hospitals in general, or public health trust hospitals like Dade County’s (which are governed by Chapter 154) in particular, at all. See 1973 Op.Att’y Gen. Fla. 073-41 (November 26, 1973).[2] And section 155.03 in any case expressly provides that “nothing herein shall require the board of county commissioners to expend any funds of the county in the maintenance of such hospital or the administration of such trust.”
Beyond all this, it is simply incomprehensible that the legislature could have disposed of the immensely complex political, societal, technical and financial problems and interrelationships involved in the provision of health care to the indigent by placing the entire burden of doing so upon our counties in two or three lines of off-handedly-considered legislation.[3] The result of the majority’s having concluded otherwise will be, I suppose, to require the courts to undertake what are the quintessential^ legislative, executive and administrative tasks of writing the contents and supporting regulations of the Little Medicaid Bill judicially enacted by the Third District Court of Appeal.[4] We do not have and should not have arrogated to ourselves the power to do any such thing. I would va *236 cate the panel opinion and reverse the order below.[5]
NESBITT, DANIEL S. PEARSON and FERGUSON, JJ, concur.

. As we see it, the legislative intent announced in Section 154.302, Florida Statutes (1981), is basically repeated in the first sentence of Section 154.306, Florida Statutes (1981). It is immediately followed by the limitations in question. Thus we hold that the home county is responsible for all charges with the limitation or cap found in the second sentence of *235 Section 154.306, Florida Statutes (1981), subject further to the exceptions found in the third sentence of Section 154.306, Florida Statutes (1981). The third sentence provides two circumstances. First, the home county will not be responsible for the care of its indigents in a regional hospital if the services rendered were available locally. This is not applicable to the facts of this case since the needed St. Mary’s services were not available in Okeechobee. Second, this exception is qualified if the services rendered are of an emergency nature in which case the home county would be responsible for payment.
442 So.2d at 1046.

.Chapter 73-102, Laws of Florida [154.07-154.-12, F.S.], authorizes the governing body of each county to create a governmental unit known as a public health trust ... A Ch. 155, F.S., hospital is owned by the county as a political subdivision, but it is not operated and governed or controlled by the governing body of the county. A board of trustees, appointed by the governor pursuant to 155.06 is responsible for the operation, maintenance, and governance of a Ch. 155 hospital. An inspection of the preamble to Ch. 73.102, supra, forecloses the possibility that the legislature intended a Ch. 155 hospital to be included within 2(a), Ch. 73.102 [154.08(1), F.S.], as a "designated facility.” The preamble, which clearly states in the first sentence that "[wjhereas there are counties of this state which through their governing bodies own, operate and govern public health care facilities ...”, precludes the possibility of including a Ch. 155 hospital, which is not owned, operated, and governed by a board of county commissioners, within those designated healthcare facilities which may be transferred to the public health trust. Thus, the only healthcare facilities intended by the legislature to be designated facilities, and hence transferable, are those which are actually owned, operated, and governed by the board of county commissioners.

. That the legislature did not think it had done so is demonstrated by its enactment of the Public Medical Assistance Act, sec. 154.32 et seq., Fla.Stat. (1984), which dealt extensively with the problem and which is completely inconsistent with the thought that counties have already been made entirely liable for indigent hospital care.

. The county has suggested — and I see no reason to disagree — that any or all of some 25 different and difficult issues, none of them properly resolvable in a judicial setting, have been created by the holding in this case. The following are a representative sample:
(a) Must the Public Health Trust reject all paying patients, leaving all of its beds for indigents in light of section 154.11 allowing each trust to set its own rates and charges?
(b) To what extent would Dade County be financially responsible to each entity or person treating indigents?
(c) Would podiatrists, naturopaths, chiropractors, osteopaths or optometrists be entitled to the same rate of reimbursement as other medical practitioners?
(d) If a patient who is not an indigent but incapable of paying is brought to the Public *236 Health Trust needing emergency care, and is treated and stabilized but needs further treatment, must the Public Health Trust transfer that patient to another hospital because it subjects itself to a lawsuit for retaining non-indigent patients?
(e) Out of what fund must Dade County pay for such medical expenses?
(f) In the case of catastrophic illnesses, is there a limitation or cap on the amount hospitals may bill the County?
(g) If raising taxes is needed to appropriate more funds to pay for indigent medical care, is it legally permissible for the lower Court to compel Dade County to raise taxes, notwithstanding the Supreme Court’s ruling that only the Board of County Commissioners has the authority consistent with the Florida Constitution to decide the millage rate? See Board of County Commissioners v. Wilson, 386 So.2d 556 (Fla.1980).
(h) Who are indigents and who decides the various classifications of indigency?
(i) How long must indigents reside in Dade County before being eligible for free medical service, and if a citizen who did not have money to pay for medical needs moved from another state or county to Dade County, and immediately was admitted into a hospital, would that hospital be eligible for reimbursement?
(j) Would Dade County be obligated to reimburse private hospitals and physicians for costs only, or would the hospital be entitled to overhead and profit?

. I also have grave doubts about the standing of the appellee to maintain this action. Although it presumably sues as a subrogee of the indigents it has treated, it also insists that, as a private hospital, it has no obligation whatever to treat any non-emergency patient it does not wish to care for. It would appear, therefore, that it was acting as a mere volunteer in providing the services in question and would therefore not be entitled to invoke the doctrine of subro-gation. 12 Fla.Jur.2d Contribution, Indemnity & Subrogation, § 20 (1979).