## STATE OF FLORIDA v COLLADO

Case Nos. 87-4563 TT A02; 87-4558 TT A02; and 87-4550 TT A02

County Court, Palm Beach County

July 8, 1987

### APPEARANCES OF COUNSEL

Michael Celeste and Cathy Donnelly, Assistant State Attorneys, for plaintiff.

Barry Krischer for defendant.

### OPINION OF THE COURT

HOWARD C. BERMAN, County Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Suppress based upon the Defendant's arrest for driving under the influence of alcohol. The State of Florida was represented by Assistant State Attorney Michael Celeste and the defendant was represented by

Barry Krischer. The Court having taken testimony, heard argument of counsel and being otherwise fully advised in the premises, the Court finds as follows:

## FACTS

The State and the defendant have stipulated to a factual basis. On January 1, 1987, the defendant was operating his motor vehicle northbound on I-95. An ambulance attendant was operating his vehicle behind that of the defendant and observed him failing to remain within a single lane. The operator of the ambulance put on his flashing red light and thereby had the defendant pull off to the shoulder of the road. After some conversation with the defendant, the ambulance attendant returned to his vehicle and radioed his base to contact the Florida Highway Patrol. Trooper Sheehan was contacted and reported to the scene of the stop. Trooper Sheehan testified that upon his arrival on the scene, the defendant was in his vehicle which was parked on the shoulder of the road. Trooper Sheehan approached the vehicle and immediately reached through the open driver window and removed the car keys from the ignition. Trooper Sheehan testified that one reason for taking the keys was for his own protection and safety. The Trooper further testified that from that moment the Defendant was not free to leave, yet he did not develop probable cause to arrest the defendant for DUI until later on in time.

## FINDINGS

The issue raised by the defendant through his Motion to Suppress is whether the seizure of the ignition keys from the vehicle by Trooper Sheehan immediately upon approaching the vehicle constituted an arrest of the defendant. In that Trooper Sheehan acknowledged that he did not develop probable cause until later in time, the defendant contends that the exclusionary sanction applies to any fruits of a constitutional violation whether such evidence be tangible, physical, material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused.

The Court finds that the defendant's position is sustainable only if the conduct of Trooper Sheehan in seizing the ignition keys constituted a seizure or an arrest of the defendant. In determining whether a suspect is in custody, "the ultimate inquiry is simply whether there is a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983), quoting *Oregon v.*

*Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed. 2d 714 (1977). The majority of courts, including Florida, approach this inquiry from the perspective of how a reasonable person would have perceived the situation. *Roman v. State,* 475 So.2d 1228 (Fla. 1985); *Drake v. State,* 441 So.2d 1079 (Fla. 1983), *cert. denied,* 104 S. Ct. 2361 (1984). "A policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 104 S.Ct. 3138 (1984). Thus, a person is in custody if he is not free to leave.

Issues concerning governmental restraint of individual liberty are not to be resolved by determining what, after a close review of the applicable cases, a judge or lawyer would know policemen are constitutionally authorized to do. Rather, they are dependent upon what an ordinary man, faced with a confrontation in the real world with persons who are asserting official authority would reasonably believe that the officers can do. *State v. Frost,* 374 So.2d 593 (3d DCA 1979).

The State argued a line of cases which held that defendants were not in custody for speedy trial purposes, and therefore should be followed in the case at bar. However, this Court finds that cases which address the speedy trial issue are not analogous to this case or to cases which involve the singular issue of arrest. In *Corvello v. State,* 455 So.2d 1321 (Fla. 3d DCA 1984) although defendant was handcuffed, not permitted to move from his chair and subsequently released, the Court held that the Defendant was not in custody under the speedy trial rule. However, the Court did hold that the defendant was clearly in custody for 4th Amendment purposes. In another case, *State v. Robbins,* 359 So.2d 39 (Fla. 2d DCA 1978) the defendant was momentarily handcuffed, taken to the hospital and allowed to leave and was never under arrest for purposes of speedy trial rule but in custody under *Miranda.* These cases are distinguishable since the defendant in *Robbins* was always free to leave and was detained for his own safety, not the officer's. In addition, the defendant was read his *Miranda* rights but then released. In the case at bar, defendant was never released from custody until after being taken to the police station and being booked.

The State further argued that the defendant was subjected to a lawful temporary detention based upon founded suspicion for further investigation as a consequence of the Trooper's discussion with the ambulance attendant. However, in a recent United States Supreme Court decision, *Florida v. Royer,* 460 U.S. 491, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983), police may not seek to verify their suspicions by means that approach the conditions of arrest. In *Royer,* the detention

88

to which he was subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity. Therein the Court found that when a police officer requested Royer to produce his airline ticket and driver's license prior to questioning him and thereafter retained his airline ticket and driver's license and without indicating in any way that Royer was free to depart, he was effectively seized for the purposes of the 4th Amendment. The Court went on to say that the police exceeded their limits of investigative stop when they retained his airline ticket and driver's license and indicated in no way that he was free to depart.

The United States Supreme Court stated in *Royer:*

"It is also clear that not all seizures of the person must be justified by probable cause to arrest for a crime. . . . *Terry* created a limited exception to this general rule: certain seizures are justifiable under suspicion that a person has committed or is about to commit a crime. In that case, a stop and a frisk for weapons were found unexceptionable. . . .

Although not expressly authorized in *Terry, United States v. Brignoni-Ponce,* (cite omitted), was unequivocal in saying that a reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purposes of questioning limited to the purpose of the stop. . . .

*Terry* and its progeny nevertheless created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detention may be 'investigative' yet violative of the Fourth Amendment absent probable cause. . . .

. . . The officers had Royer's ticket, they had his identification, and they had seized his luggage. Royer was never informed that he was free to board his plane if he so chose, and he reasonably believed that he was being detained. At least as of that moment, any consensual aspects of the encounter had evaporated and we cannot fault the Florida District Court of Appeal for concluding that *Terry v. Ohio* and the cases following it did not justify the restraint to which Royer was then subjected. As a practical matter, Royer was under arrest."

The defendant contends that the seizure of his car keys is equivalent to the seizure of the airline tickets and driver's license in the *Royer* case in that in both instances the conduct of the law enforcement officer made it virtually impossible for both men to leave the area. The defendant cites other Florida cases to the same effect. In *State v. Hewitt,* 495 So.2d 809 (1st DCA 1986), the police officer's

taking of defendant's driver's license effectively was a restraint on defendant's liberty since he could not leave without it. The officer converted a legal detention to an illegal arrest by a restraint on the freedom of the defendant to leave. In *State v. Frost,* 374 So.2d 593 (3d DCA 1979), the Court found that the seizure of the defendant's airline ticket and driver's license constituted a seizure of the defendant. The Court held that any person in Frost's position being questioned by narcotics officers who are both holding his means of departure would have been, at the very least, "under the reasonable impression that he was not free to leave the officer's presence." Also, in *State v. Cahill,* 388 So.2d 354 (2d DCA 1980) the Court found that the seizure of the defendant's purse by the police officer immediately upon approaching her was in effect, a restraint on her liberty, since defendant would not leave without her purse. With no founded suspicion that the defendant was engaged in criminal conduct, the restraint was improper and taints the subsequent admission and evidence. Although Trooper Sheehan did not seize the defendant's license, the seizure of the keys is analogous in the sense that if one is not free to leave the presence of an officer who is holding a purse or a license, he is also not free to leave if keys are withheld. Although all people are free to walk the streets without purses, licenses or keys, the detention (restraint) of those objects at the hands of an officer is what is decisive in determining whether one's liberty has been restrained.

This Court is bound by the precedent set by the United States Supreme Court in *Florida v. Royer, supra,* and finds that the seizure of the defendant's ignition keys in the above styled cause constituted an arrest of the defendant, and in that it has been stipulated that the Trooper had not at the time developed probable cause for an arrest, the Defendant's Motion to Suppress is granted.

DONE AND ORDERED in chambers at West Palm Beach, Palm Beach County, Florida this 8th day of July, 1987.