THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELIJAH JEFFERSON (Impleaded), Defendant-Appellant.

(No. 54143; 

First District—May 28, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty and Ronald P. Katz, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Thomas M. Walsh, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was found guilty after a bench trial of the offense of unlawful sale of a narcotic drug. (Ill. Rev. Stat. 1967, ch. 38, par. 22—3.) Judgment was entered and he was sentenced to a term of ten to fifteen

years.* On appeal defendant contends that he was not proven guilty beyond a reasonable doubt.

*Testimony of A'Roterick McLaughlin,* for the State:

He is a police officer with the Chicago Police Department assigned to the Vice Control Division, Narcotics. On March 13, 1968, at 4:00 P.M. he met his partners, Officers King and Kelly, at 22nd and Indiana. He then drove his own car to a tavern at 1456 East 67th Street called "That Lounge." Once inside That Lounge he met defendant who was behind the bar. He had seen defendant once before, on February 6, 1968, when defendant was tending bar at That Lounge. On March 13 he had a conversation with defendant alongside of the juke box and defendant asked him if he wanted to "cop a bag of smoke" (buy a bag of marijuana). He told defendant he would buy a ten dollar bag. "Mr. Jefferson said he was getting off duty, if I would wait he would take me to his man where he would cop some for me." By "get off duty" defendant meant when he was through working for the day at That Lounge as a bartender.

He arrived at That Lounge at approximately 5:00 P.M., had the conversation with defendant and then left with defendant about 5:10 P.M. He drove defendant in his car to the Music Box which is another tavern located on the southeast corner of 43rd and Michigan Avenue. Upon their arrival they sat down next to a male Negro, known to him as Frank Lewis. There was normal lighting in the tavern. Defendant and Lewis had a conversation. The witness was about two feet from Lewis when defendant told Lewis that defendant wanted to cop a bag for him (McLaughlin). Lewis said he could handle it and asked defendant how much he wanted to purchase. Defendant told Lewis that a ten dollar bag was needed. The witness gave defendant one five dollar and five one dollar bills. This money was from the narcotics unit but it was not recorded. Defendant immediately turned the money over to Lewis. Lewis told them that they should wait a few minutes while he picked up the bag.

Defendant and he waited about four minutes and then left the Music Box. They walked north on Michigan Avenue in the 4200 block. When he left the Music Box with defendant he saw Officers King and Kelly parked at a gas station at 43rd and Michigan. King and Kelly were approximately 200 feet from the Music Box entrance. He then observed Lewis walking south on Michigan on the east side of the street. Lewis crossed the street to meet defendant and him. This occurred at about

---

* Defendant was tried jointly with co-defendant Frank Lewis (hereinafter "Lewis") who was also found guilty of the unlawful sale of a narcotic drug and was sentenced to ten to fifteen years.

5:25 or 5:30 P.M. (On cross-examination the witness stated it was approximately 5:15, 5:20 "something like that.") Lewis pulled a silver foil package out of his pocket and said, "This is dynamite stuff." Lewis handed the package to defendant who in turn handed it to the witness. All three then walked back south on Michigan and Lewis went back inside the Music Box. Defendant and he returned to his car and he drove defendant to the 1400 block of 67th Street where defendant got out at "approximately 20 minutes to 6:00, quarter to 6:00, something like that" and left. He had a general conversation with defendant as they drove from the Music Box to 67th Street. He examined the contents of the fail package while defendant and he were driving back to 67th Street. The package contained a crushed green substance.

After he dropped off defendant he met Officers King and Kelly at 67th Street and Stony Island. He handed the foil package to King and related what had occurred. They drove to 1121 South State Street, Chicago Police Headquarters. King and Kelly went inside and brought back several photographs. He picked out Lewis' picture. He identified both defendant and Lewis as the two men who sold him the narcotic drug.

Defendant finished work a few minutes to five. He did not notice if anyone was behind the bar when defendant and he left That Lounge. There were other customers in the tavern at this time. He did not know if a Mr. Mitchell was at That Lounge on March 13th.

*Testimony of Thomas King, for the State:*

He is a police officer with the Chicago Police Department. On March 13, 1968, he was working with Detective A'Roterick McLaughlin, an undercover police officer, and Detective John Kelly. At 4:00 P.M. on March 13th Kelly and he proceeded to 22nd and Indiana where they met McLaughlin. They followed McLaughlin to the area of 1400 East 67th Street where they parked their car. They observed McLaughlin enter That Lounge at approximately 5:00 P.M. About five minutes after McLaughlin entered the lounge he came out with defendant. It was still daylight.

He observed defendant and McLaughlin enter a car and proceed west on 67th, north on Cottage Grove to 43rd, turn left, proceed west on 43rd to Michigan, turn left again and then park. They parked their unmarked police car at a gas station near the Music Box at approximately 5:35. He saw defendant and McLaughlin enter the Music Box. Defendant and McLaughlin remained inside for four or five minutes and then came back outside and walked north on Michigan. He instructed Kelly to drive around the block to 42nd Street. As they were driving toward defendant and McLaughlin he observed Lewis cross over Michigan and meet defendant and McLaughlin. Lewis walked right up to defendant

and McLaughlin. "It appeared they were in a conversation and at which time they started walking back toward 43rd Street." Kelly drove right past the three men so he could see this third man. At this time he recognized Lewis. Lewis went back inside the Music Box. Defendant and McLaughlin drove back to the 1400 block of 67th Street where defendant got out of McLaughlin's car and left.

He identified defendant and Lewis as the two men who were with Detective McLaughlin on March 13th.

It was stipulated between the parties that the crushed green plant found inside the tin foil package was marijuana.

*Testimony of Elijah Jefferson,* defendant, in his own behalf:

On March 13, 1968, at 5:00 P.M., he was at work at the Den, 1461 East 67th Street. He had been employed there off and on for two years. Two ladies own the Den. He was not employed at That Lounge. The Den is located diagonally across the street from That Lounge.

On June 10, 1968, he was arrested at That Lounge. He was watching the lounge for the owner, Mitchell. He told the arresting officers that, "You got to be kidding  *  *  *  You trying to put me on." He was shown a paper giving him his constitutional rights. He was asked if he knew anything about the Music Box at 43rd and Michigan and he said, "Yes, I did. I used to manage it back in 1966."

Prior to his arrest on June 10th he had never seen McLaughlin before. On June 10th he saw McLaughlin when McLaughlin entered That Lounge and asked him if he knew where to buy pot. He told McLaughlin, "No, I don't, and I don't want to know because I have had my trouble with dope before."

He did not know Lewis personally but he had seen him around. He was not inside That Lounge on March 13, 1968, nor was he a bartender there. He never talked to Lewis on March 13. He did not know where Lewis lived or worked. He never sold any narcotic drug to McLaughlin on March 13th.

On March 13, 1968, he knew a person who frequented That Lounge who looked like him. His name was Dallas.

On cross-examination he testified that he had been convicted on three different occasions for narcotics violations. He remembered his September 1961 and December 1962 convictions. After he was arrested on June 10, 1968, he was advised of his constitutional rights.

*Testimony of Frank Lewis,* co-defendant, for the defense:

He is a bartender and is employed by his mother at her lounge located at 4300 South Drexel. On March 13, 1968, he was working at the lounge until 7:00 P.M. when he went to the race track. He never saw McLaughlin on March 13th. He was not at the Music Box on March 13th or at

any time during 1968. His mother's lounge is about one mile from the Music Box. He surrendered to the police upon the advice of his attorney.

He knew defendant but not intimately. He did not see defendant on March 13th nor did he receive ten dollars from defendant. He never gave defendant a tin foil packet on March 13th.

*Testimony of Betty Pollens,* for the defense:

She knew defendant on March 13, 1968. The Den is owned by Barbara and Claudette Wilson. Mr. Mitchell owns That Lounge. Mr. Mitchell was in court on January 14, 1969, the day the case was set for trial, but she was unable to locate him on January 15, 1969, the day the case went to trial.

*Opinion*

Defendant contends that he was not proven guilty beyond a reasonable doubt because Officer McLaughlin's testimony is improbable, unworthy of belief and uncorroborated. Defendant first claims that Officer McLaughlin's testimony concerning the chronology of events was incredible since it indicates that defendant and he made a trip of almost thirty-seven blocks in rush hour traffic from That Lounge to the Music Box in but five minutes. This is based on McLaughlin's testimony on cross-examination that he saw Lewis on 43rd and Michigan Avenue at approximately 5:15, 5:20. However, on direct examination McLaughlin testified that this incident occurred at 5:25 or 5:30 and Officer King testified that they left That Lounge at 5:05 and arrived at the Music Box at 5:35. These alleged discrepancies were fully brought out before the trial judge whose function it was to determine the credibility of the witness (*People v. Morgan,* 28 Ill.2d 55) and we find no reason to disturb his finding.

Defendant also argues that McLaughlin's testimony is unworthy of belief since it would be unlikely for defendant to leave That Lounge while six customers remained inside and because it would also be improbable for him to act as a conduit in a narcotics sale for little or no profit. Defendant's argument, however, overlooks the fact that defendant allegedly told McLaughlin that he was ready to leave with McLaughlin at 5:00 P.M. when he finished working. Further, it is not altogether improbable for a person to participate in a sale of narcotics for little or no apparent monetary profit. See *People v. Shannon,* 15 Ill.2d 494, 496.

Finally, defendant claims that McLaughlin's uncorroborated testimony is insufficient to sustain the conviction. Defendant cites *People v. Watkins,* 68 Ill.App.2d 389; *People v. Jackson,* 103 Ill.App.2d 123; and *People v. Dade,* 109 Ill.App.2d 337, which held that an addict informer's testimony must be received with great caution and that lack of corroboration was one of the factors to be considered in weighing his credibility.

These cases are inapplicable to the testimony of McLaughlin, who was a police officer and not an addict informer. It has been repeatedly held that the testimony of one witness as to the details of a narcotics sale, if positive and credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Anthony*, 28 Ill.2d 65, and *People v. Guido*, 25 Ill.2d 204.) We note, however, that certain portions of McLaughlin's testimony were corroborated by Officer King. (*People v. Parson*, 27 Ill.2d 263.) A trial court's finding will be disturbed only where it is so unsatisfactory as to create a reasonable doubt of defendant's guilt. (*People v. Dabner*, 266 N.E.2d 714, and *People v. Adorno*, 126 Ill. App.2d 98.) In the instant case we find that the evidence was not so unsatisfactory as to create a reasonable doubt of defendant's guilt.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.

