THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL W. DUNN, Defendant-Appellant.

Fifth District   No. 76-311

Opinion filed June 10, 1977.

David W. Watt, Jr., of Hendricks & Watt, of Murphysboro, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

On November 7, 1974, an information was filed in Jackson County charging defendant-appellant, Paul W. Dunn, with the offense of unlawful delivery of a controlled substance, cocaine. (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(b).) Defendant was arrested that same day. Defendant was found guilty after a jury trial in the circuit court of Jackson County and was sentenced to the Illinois Department of Corrections for a period of not less than one nor more than three years and to a fine of $1500.

Three issues are presented by defendant in this appeal: (1) whether the court erred in denying defendant's pretrial motion for dismissal of the charge because of a 262-day delay between the alleged offense and the filing of the information; (2) whether the State proved defendant guilty of the offense beyond a reasonable doubt; and (3) whether the court erred in refusing to give instructions tendered by defendant on a lesser included offense and giving certain instructions of the State over defendant's objections.

The State's case consisted of the testimony of three witnesses. Two of these witnesses, Louise Banks and William Hood, were special agents of the Illinois Bureau of Identification (IBI). The third witness, Daniel Lecocq, was a criminalist at the IBI crime lab in Desoto, Illinois. The defendant did not present any witnesses.

Agent Louise Banks testified that on February 19, 1974, she was working with William Hood, another special agent of the Bureau. On that

day she rode in an unmarked State vehicle, driven by agent Hood, from Springfield to Carbondale, Illinois. Her purpose in making this trip was to purchase narcotics from the defendant. She indicated in court that the defendant was the man she was referring to and with whom she dealt on February 19.

She met defendant at the Carbondale Holiday Inn at approximately 1:10 or 1:15 p.m. This arrangement was set up through a confidential source who remained nameless throughout the trial. When agent Banks arrived at the Holiday Inn, the defendant was standing in front of the building. As defendant and agent Banks went to defendant's car, defendant told her they should go to the Pizza Hut to consummate the transaction since there were lots of police who "hang out" at the Holiday Inn. Agent Banks returned to agent Hood's car and told him they would be going to the Pizza Hut, which was across the street and some distance down the block. Agent Banks proceeded to the Pizza Hut with the defendant in his car, which she described on cross-examination as a tan 1967 or 1968 Chevrolet. Agent Hood followed them to the Pizza Hut lot.

Once in the Pizza Hut parking lot, defendant removed a clear plastic bag from his coat; it contained a black chunky substance which defendant represented as cocaine. Agent Banks had never seen any cocaine in this form. Defendant said he had not either but understood that it was good "stuff." Agent Banks got out of defendant's car and went to agent Hood's car to confer on whether to buy this substance. They decided to do so. Agent Banks returned to defendant's car and gave him $1400 in unmarked bills in exchange for the substance. When she got back into agent Hood's car after the exchange, she showed him the substance which she had transported in her purse.

Agents Banks and Hood proceeded to the Marion IBI office where they placed the plastic bag containing the substance into an evidence envelope and marked them both with their initials and signatures as well as with other pertinent information concerning the circumstances under which it was received. Agents Banks and Hood thereafter took the evidence to the Desoto crime lab and gave it to criminalist Daniel Lecocq for analysis. Agent Banks identified the substance and envelope, presented at trial as People's Exhibit 1, as the item she received from defendant and marked in the Marion office.

Several matters were elicited during cross-examination of agent Banks including the following: (1) agent Banks believed February 19 was the only time she was in Jackson County in 1974; (2) agent Banks made some notes immediately after the incident concerning the alleged sale which were not available at the time of the trial but were used to prepare her report of the incident; (3) agent Hood did not search her person or her

purse prior to the alleged sale as would be done if the purchaser were an informant; and (4) agent Banks reviewed her report and the lab report prior to the trial to refresh her memory although she remembered the incident.

Agent William Hood identified defendant as the man agent Banks met on the day in question. His testimony corroborated agent Banks on most matters. He, however, did not see the actual exchange of narcotics for money. Agent Hood picked up the substance, People's Exhibit 1, on July 17, 1974, from Mr. Lecocq in Desoto. He took it to Springfield and it was locked in the Bureau's evidence vault the same day. Agent Hood took it out the morning of the trial and brought it to the court.

Defendant attempted to impeach agent Hood's testimony by virtue of inconsistencies between his testimony at trial and at the preliminary hearing. At trial, agent Hood testified that on February 19, Mr. Lecocq gave him the receipt, People's Exhibit 2, for the substance left for analysis; he testified at the preliminary hearing that the receipt was given to agent Banks. Agent Hood also testified at trial that he had seen defendant prior to February 19; however, he testified at preliminary hearing that he had not become acquainted with defendant prior to this date. Agent Hood explained that "seeing someone" and "being acquainted with someone" mean two different things to him.

Daniel Lecocq testified he was in his seventh year with the IBI. He testified as to his training, that he had a Bachelor of Science degree in chemistry, that he had had eight months on-the-job training in drug analysis, and that he had completed 40 hours of training with the Federal Bureau of Narcotics and Dangerous Drugs in Washington, D.C. He first analyzed cocaine in 1970. Mr. Lecocq received People's Exhibit 1 from agent Banks on February 19, 1974. He marked it with a case number at that time. On April 10, 1974, he spent the better part of a day analyzing the substance. The plastic bag was marked with this date and his initials and resealed the same day. His analysis revealed that the substance weighed 26.2 grams and contained cocaine. Mr. Lecocq had no doubt in his mind at the time of trial about his findings. On July 17, 1974, agent Hood retrieved the substance.

On cross-examination, Mr. Lecocq agreed that basically he only conducted tests for the presence of cocaine since this is what the agents told him they suspected it to be. He performed two tests. One was indicative of the presence of cocaine but inconclusive since other substances could also be indicated by the results. The other test was an "infrared spectometry." This test, in Mr. Lecocq's opinion, will reveal what the specific drug tested is. He had to prepare the substance by several processes before this test. The test resulted in a graph which was

compared with a graph yielded from the spectometry of a sample of known cocaine. In Mr. Lecocq's opinion, they matched exactly; the substance was cocaine.

Defendant first contends that it was reversible error for the trial court, in ruling on his pretrial motion for dismissal of the information, to find that his due process rights had not been violated by the 262-day delay between the time of the alleged offense and the filing of the information charging him with the offense. He argues that his affidavit which was attached to the motion to dismiss established that he had been actually prejudiced in presenting a defense because of this delay. He further argues that the court was in error in refusing to shift the burden of proving the reasonableness of the delay upon the State because of this affidavit. His affidavit basically stated that he was amenable to arrest at any time during the 262 days, that his whereabouts were known to police authorities throughout this period, and that because of the delay and his having no independent recollection of the events of the day, he could not aid his attorney in establishing an alibi defense. We find that this contention lacks merit and that we cannot agree with defendant's argument.

■■ In recent years courts have frequently had to deal with the question of whether a defendant will be denied a fair trial guaranteed him under the due process clause because of delay in beginning his prosecution. This situation has occurred most often in drug cases because of the methods necessarily employed in the detection of offenders and obtaining evidence of their violations. The effectiveness of undercover police or drug agents who make purchases from drug dealers depends upon keeping the nature of their employment unknown for as long as possible so that they may discover other drug dealers in the chain of distribution. In *United States v. Marion* (1971), 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455, the United States Supreme Court, in a non-drug-related case, held that the sixth amendment right to a speedy trial does not come into play until the person has become, in some sense, an accused, whether by arrest, indictment or the filing of formal charges. (Also see *People v. Kennedy*, 39 Ill. App. 3d 323, 350 N.E.2d 482.) The court also made clear that possible prejudice to the defendant by reason of pre-accusation delay as opposed to actual prejudice which could deny him the due process of law is safeguarded by the applicable statute of limitations. (404 U.S. 307, 321-22, 30 L. Ed. 2d 468, 479, 92 S. Ct. 455, 464. Also see *People v. Holland*, 28 Ill. App. 3d 89, 327 N.E.2d 597.) The court held that to constitute a violation of due process requiring dismissal of an indictment it must be shown that the delay between the time of the alleged commission of the offense and the filing of a charge caused substantial actual prejudice to defendant's right to a fair trial; the court also indicated that even if the defendant could prove such prejudice, the delay of

prosecution might have to be unreasonable under the circumstances or an intentional device to gain a tactical advantage over the defendant to warrant dismissal, since the shortest and most necessary delays could actually prejudice a defendant's case. 404 U.S. 307, 324-25, 30 L. Ed. 2d 468, 481, 92 S. Ct. 455, 465-66.

On this issue defendant directs our attention to a line of cases of the Federal Court of Appeals for the District of Columbia that has required a "detailed judicial exploration of the underlying reasons" for precharge delay of over four months in narcotics cases where the defendant has come forward with a "plausible claim" of prejudice, such as inability to present a defense because of faded memory. (*Robinson v. United States* (D.C. Cir. 1972), 459 F.2d 847; *Woody v. United States* (D.C. Cir. 1966), 370 F.2d 214; *Ross v. United States* (D.C. Cir. 1965), 349 F.2d 210.) We are not persuaded to adopt this approach because we believe it does not properly reflect the ruling in *United States v. Marion* and because it is premised upon that court's supervisory power over criminal trials in its circuit rather than on pure due process considerations. See *United States v. Cowsen* (7th Cir. 1976), 530 F.2d 734, *cert. denied* (1976), 426 U.S. 906, 48 L. Ed. 2d 831, 96 S. Ct. 2227 (rejecting this approach).

■■ Defendant argues that the applicable standard of prejudice which the accused must meet in asserting a denial of due process caused by pre-accusation delay was established in *People v. Jennings* (1973), 11 Ill. App. 3d 940, 298 N.E.2d 409. He states that this standard is a plausible claim of prejudice based on an inability to remember. We cannot agree. Defendant has misplaced his reliance on *Jennings*. Both *Jennings* and *People v. Love*, 39 Ill. 2d 436, 235 N.E.2d 819, a case upon which *Jennings* relies heavily, involved delays between the filing of charges, issuance of arrest warrants and the actual arrests of defendants and were decided on the basis of the right to a speedy trial, not on the grounds of due process denials occasioned by pre-accusation delays. They are thus distinguishable from, and inapplicable to, the case at hand. We believe the proper standard is that established by *United States v. Marion*.

■■ Subsequent to the time we took this case for opinion, our supreme court has filed an opinion in a consolidated appeal which clearly establishes that the *Marion* standard is to be employed in Illinois in deciding whether a defendant has been denied due process because of a pre-accusation delay. See *People v. Lawson* (Docket No. 48554, May Term 1977), ___ Ill. 2d ___, ___ N.E.2d ___.) We believe that the *Lawson* case is controlling and that it compels us to affirm the denial of defendant's motion to dismiss the instant information.

In *Lawson*, the court succinctly described the procedure to be followed and the applicable rules as follows:

> "Although the various cases vary on the manner of the determination of prejudice due to preindictment delay, we agree

that a delicate judgment by the trial court is necessitated, whether engaged in before, during, or after trial. Where there has been a delay between an alleged crime and indictment or arrest or accusation, the defendant must come forward with a clear showing of actual *and* substantial prejudice. *Mere assertion of inability to recall is insufficient.* If the accused satisfies the trial court that he or she has been substantially prejudiced by the delay, then the burden shifts to the State to show the reasonableness, if not the necessity, of the delay.

If this two-step process ascertains both substantial prejudice and reasonableness of a delay, then the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider, among others, are the length of the delay and the seriousness of the crime." ___ Ill. 2d ___, ___ (Emphasis added in part.)

The court's rejection of the sufficiency of mere assertions of an inability to recall is eminently reasonable. As noted in *United States v. Cowsen,* an assertion of faded memory could be plausibly asserted in nearly any criminal case in which the defendant is not charged within a few weeks, and "[i]f the limitation for prosecution were measured by the length of defendant's memory of routine events, few crimes could be prosecuted." 530 F.2d 734, 736.

We note that one of the cases consolidated for opinion in *Lawson* presented to the supreme court the question whether an affidavit nearly identical to the one filed below demonstrated actual and substantial prejudice. The court found that it did not, and we, likewise, find that defendant's assertion of inability to recall, standing alone as it was from any indication of other prejudice such as loss of evidence or witnesses, did not evidence actual and substantial prejudice of the unusual nature required to establish a denial of his due process rights. Consequently, the burden never shifted to the State to prove the reasonableness of the delay and the trial court properly denied defendant's pretrial motion.

Defendant's second contention is that he was not proven guilty beyond a reasonable doubt of unlawful delivery of a controlled substance. He argues that the testimony of agent Banks is not positive or clear and convincing. We do not agree.

Defendant relies heavily on *People v. Jones,* 9 Ill. App. 3d 387, 292 N.E.2d 435, for support in his contention that defendant was not proved guilty beyond a reasonable doubt. In *Jones,* the court reversed a conviction for unlawful sale of narcotic drugs because it felt the evidence was insufficient to sustain the conviction. However, it can be distinguished from the case in bar in several respects. In *Jones,* police officer Zuniga was the only witness to the sale of heroin, his testimony was totally

uncorroborated, the only test conducted on the substance was a "field test" which is indicative of the presence of heroin only, and officer Zuniga's testimony revealed he had no recollection of the events which occurred prior to and after the alleged purchase. In contrast, in the case at bar agent Banks testified at some length as to what she and agent Hood did both prior to and subsequent to the sale. Her testimony was corroborated in many important aspects by agent Hood, and a much more reliable and specific laboratory test was conducted on the substance as evidenced by Daniel Lecocq's testimony. We must disagree with defendant's assertion that the facts presented in *Jones* closely parallel those in the instant case.

It is a well-established rule that the testimony of one law enforcement officer as to the details of a narcotics sale, if positive and credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Jefferson*, 133 Ill. App. 2d 221, 272 N.E.2d 757; *People v. Schneekloth*, 129 Ill. App. 2d 451, 263 N.E.2d 500.) Corroboration is usually only needed when the witness is an addict-informer. (*People v. Jefferson; People v. Schneekloth*.) In the instant case, the testimony of agent Banks was uncontradicted since defendant did not put on any evidence, and as already noted, agent Hood's testimony corroborated much of agent Banks' testimony.

■■ It is the jury's function to weigh the testimony and judge the credibility of witnesses. (*People v. Akis*, 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Morse*, 33 Ill. App. 3d 384, 342 N.E.2d 307.) A reviewing court will overturn the jury on a question of credibility of the witnesses only when the evidence presented is so improbable, unbelievable, or unsatisfactory as to raise a serious question of the guilt of the defendant. (*People v. Jones*, 60 Ill. 2d 300, 325 N.E.2d 601; *People v. English*, 32 Ill. App. 3d 691, 336 N.E.2d 199.) After a careful examination of the evidence we conclude that there is no basis to overturn the jury's assessment and belief of agent Banks' testimony. Her testimony was positive and credible. She testified clearly as to the complete sequence of events on the afternoon of February 19, 1974. She recalled the specifics of several conversations, the description of defendant's car, and many other details of the incident. Defendant's second contention is therefore without merit.

Defendant's final contention is that the trial court erred in refusing to give instructions offered by defendant on the lesser included offense of possession of a controlled substance and in giving two instructions over defendant's objections. We will only discuss the ruling on the lesser included offense instruction since appellant has conceded at oral argument that there is no merit to his contention concerning the instructions the court gave over his objections.

■■ Possession of a narcotic is a lesser included offense of unlawful

delivery of a controlled substance which is a narcotic. (*People v. Herbert*, 6 Ill. App. 3d 938, 287 N.E.2d 33; *People v. Holliman*, 22 Ill. App. 3d 95, 316 N.E.2d 812.) Defendant argues that considering the nature of the testimony of the State's witnesses and the delay in filing the information the jury would have been justified in returning a verdict of guilty of the lesser offense of possession. We disagree.

■■ ■ There are two settled principles concerning the giving of instructions on lesser included offenses which are relevant to this case. One principle is that a refusal to give an instruction defining a lesser included offense is not error where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged. (*People v. Bembroy*, 4 Ill. App. 3d 522, 281 N.E.2d 389. See also *People v. Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445.) The second principle is that where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given. (*People v. Bembroy; People v. Williams*, 31 Ill. App. 3d 161, 333 N.E.2d 655.) We find that the court did not err in denying defendant's proffered instructions on this matter. It is necessarily true that one must possess a narcotic in order to deliver it to someone; however, it is not always necessary to instruct the jury on the lesser offense of possession. The test is whether there is evidence at trial to support commission of the latter and relatively minor crime. (*People v. Virgil*, 19 Ill. App. 3d 744, 312 N.E.2d 816.) The defendant did not rebut the State's evidence that he sold cocaine or introduce any evidence that he was in mere possession only. The evidence of defendant's criminality was basically supplied by agent Banks. The jury could either believe that she was telling the truth, in which event defendant was guilty of delivery, or that she was not telling the truth, in which event defendant was not guilty of any offense. All of the evidence concerned delivery of a controlled substance; there was no evidence in the record to support a conviction of mere possession; therefore, no instruction on possession would have been proper.

For the foregoing reasons, we affirm the judgment of the circuit court of Jackson County.

Affirmed.

G. MORAN and KARNS, JJ., concur.