269 S.E.2d 394 (1980)
STATE ex rel. Will M. LEONARD
v.
John HEY, Judge, etc., et al.
No. 14712.
Supreme Court of Appeals of West Virginia.
Decided July 14, 1980.
Concurring Opinion August 4, 1980.
Steptoe & Johnson, and Wayne A. Sinclair, Hanna & Elliott and Gregory E. Elliott, Charleston, for relator.
James E. Roark, Pros. Atty., Kanawha County, Pamela Dawn Tarr, Asst. Pros. Atty., Kanawha County, Charleston, for respondents.
HARSHBARGER, Justice:
Henry Russell was murdered and Ada Russell was severely wounded while being robbed in December, 1967. In January, 1968, Will M. Leonard and John Wayne Ford were indicted in Kanawha County for robbing Mr. and Mrs. Russell and murdering Mr. Russell, but not for injuring Mrs. Russell. At his arraignment, accompanied by court-appointed counsel, Leonard pled *395 guilty to first degree murder. The agreement which resulted in his plea required the prosecutor to nolle the robbery indictments, and he did.
Leonard was sentenced to life in the penitentiary without recommendation of mercy on March 26, 1968, and was imprisoned. In December, 1974, the then Governor of our state commuted his sentence to life with mercy, and thereby he became eligible for parole in 1979. In 1979 he was indicted for maliciously wounding Mrs. Russell during the 1967 criminal episode. Defendant's motion that the trial court quash the indictment because it violated his double jeopardy, speedy trial and due process rights was denied. We have no statute of limitations affecting felony prosecutions.
The government offered no reason for delaying Leonard's indictment eleven years. We may only suppose that the timing of the indictment reflected a prosecutorial decision that Leonard should not be paroled.
The state apparently has had all the evidence upon which to proceed. The criminal actor was available  securely so in the state's penitentiary. We assume no incapacity existed that prevented prosecution (either in the prosecutor's office or in defendant). With these facts, it would be difficult for us to apply the Michigan court's absolutist statement that "[m]ere delay between the time of the commission of an offense and arrest is not a denial of due process." People v. Anderson, 88 Mich. App. 513, 276 N.W.2d 924 (1979). A decade is not "mere".
We have found no state precedent anywhere that even approaches the time lapse here present between a criminal act and commencement of accusation-trial process (assuming identity and whereabouts of the person to be accused and his criminal complicity is known or reasonably should have been known to the government; and assuming his competency). See Oregon v. Harris, 37 Or.App. 431, 587 P.2d 498 (1978) (three and one-half months); State v. Roundtree, 118 N.J.Super. 22, 285 A.2d 564 (1971) (four months); People v. Duran, 188 Colo. 420, 535 P.2d 505 (1975) (en banc) (four months); People v. Anderson, supra, (four and one-half months); People v. White, 59 Mich.App. 164, 229 N.W.2d 357 (1975) (four and one-half months); Dixon v. State, Alaska, 605 P.2d 882 (1980) (five months); State v. Davis, Mo.App., 585 S.W.2d 60 (1979) (six months); People v. Hutchinson, 192 Colo. 204, 557 P.2d 376 (1976) (en banc) (six months); State v. Royal, 217 Kan. 197, 535 P.2d 413 (1975) (six months); State v. Torres, 116 Ariz. 377, 569 P.2d 807 (1977) (In banc) (seven months); State v. Cuevas, Iowa, 282 N.W.2d 74 (1979) (eight and one-half months); People v. Dunn, 7 Ill.Dec. 879, 49 Ill.App.3d 1002, 365 N.E.2d 164 (1977) (nine months); People v. Park, 36 Ill.Dec. 386, 81 Ill.App.3d 108, 400 N.E.2d 966 (1980) (ten months); State v. Griffin, 347 So.2d 692 (Fla.App.1977) (eleven months); Tolliver v. United States, 378 A.2d 679 (D.C.App.1977) (eighteen months); State v. Redding, Mo.App., 573 S.W.2d 371 (1978) (eighteen months); Hovee v. State, Wyo., 596 P.2d 1127 (1979) (twenty months); Terry v. State, Ind.App., 400 N.E.2d 1158 (1980) (two years); Commonwealth v. Imbruglia,  Mass. , 387 N.E.2d 559 (1979) (two years); People v. Nichols, 60 Ill.App.3d 919, 18 Ill.Dec. 330, 377 N.E.2d 815 (1978) (four years); Commonwealth v. Daniels, 480 Pa. 340, 390 A.2d 172 (1978) (six and three-quarter years).
In Daniels, supra, the Court stated that the time period was nearly seven years between a homicide victim's death and Daniels' arrest. Defendant did not protest denial of Sixth Amendment speedy trial rights but, relying on United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), objected that due process of law does not admit of such a long delay between the criminal act and accusation by complaint or indictment. There was no statute of limitations affecting murder prosecutions in Pennsylvania, which fact made "particularly apposite" questions in Marion about whether there was substantial prejudice to defendant caused by the delay, and whether the state by delaying was intentionally attempting to get tactical advantage over an accused.
*396 The Pennsylvania Court admired United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), rehearing denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164. It mentioned that Daniels'"argument here is largely . . . that there was sufficient evidence in the hands of the Wayne County Coroner in 1971 and the Pennsylvania State Police in 1972 to justify. . ." his arrest. "But the passage of time since these dates does not, without more, provide a basis for accepting appellant's due process claim."[1] Then the court denied defendant relief.
The United States Supreme Court has held that claims of denial of constitutional speedy trial rights do not arise until a defendant is arrested or indicted. United States v. Marion, supra. Pre-arrest or preaccusatory delays are usually governed by statutes of limitations, but even if there are such statutes, a defendant's due process rights can be violated by a prosecution initiated within the statute but unjustifiably delayed by the government.
[I]t is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. United States v. Marion, supra 404 U.S., at 324, 92 S.Ct., at 465 (emphasis added).
This text from Marion establishes what is often called the Marion test. Some courts attempting to apply it have held that a violation of due process only occurs if there is actual, substantial prejudice and intentional prosecutorial misconduct; others, that the existence of one of the factors can deny a defendant due process.[2] We do not understand Marion to establish any universally applicable tests: it only recognizes a concession made by the government. The Court's conclusion was:
To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case. Id. 404 U.S., at 325, 92 S.Ct., at 465.
In United States v. Lovasco, supra, the Court dealt with an eighteen-month pre-indictment delay by indicating that a defendant is obliged to prove prejudice to sustain a claim of due process violation. It decided that Lovasco's showing of prejudice was insufficient to justify dismissal of his indictment and that the government had justified its delay. Justice Stevens, dissenting, wrote:
We may reasonably infer that the prosecutor was merely busy with other matters that he considered more important than this case.
The question presented by those facts is not an easy one. Nevertheless, unless we are to conclude that the Constitution imposes no constraints on the prosecutor's *397 power to postpone the filing of formal charges to suit his own convenience, I believe we must affirm the judgment of the Court of Appeals. A contrary position "can be tenable only if one assumes that the constitutional right to a fair hearing includes no right whatsoever to a prompt hearing . . ." United States v. Lovasco, supra, 431 U.S., at 799, 97 S.Ct., at 2053 (Stevens, J., dissenting).
Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), is more on point. A state warrant for Dickey's arrest was issued in July, 1960. In September, he was convicted on unrelated federal charges and sent to prison. Florida authorities knew where he was and lodged a formal detainer with a United States Marshal. Dickey made several attempts to obtain a speedy trial. An information was finally filed seven years later. Although the Court speaks of violation of his Sixth Amendment speedy trial rights by the pre-information delay, its analysis and Justice Brennan's concurrence seem applicable to a claim of due process violation because of pre-indictment delay.
Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial . . . Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law. Id., 398 U.S., at 37, 90 S.Ct., at 1569 (footnotes omitted).
Justice Brennan's opinion teaches important precepts:
Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoidedwhether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect.. . . . .
Thus, it may be that an accused makes out a prima facie case of denial of speedy trial by showing that his prosecution was delayed beyond the point at which a probability of prejudice arose and that he was not responsible for the delay, and by alleging that the government might reasonably have avoided it. Arguably the burden should then shift to the government to establish, if possible, that the delay was necessary, by showing that the reason for it was of sufficient importance to justify the time lost. General standards could be developed by determining, first, the weight to be given various grounds for delay and, then, how great a delay is justifiable for each. Some grounds, such as an attempt to gain an advantage over the accused, would have no value; legitimate reasons might have different weights, an attempt to locate a minor prosecution witness having less justificatory force than an attempt to locate a witness on whose testimony the prosecution hinges. Id., 398 U.S., at 52-54, 90 S.Ct., at 1576.
We need not interpret federal law to define due process or Sixth Amendment rights because we have our own state due process and speedy trial provisions. W.Va. Const. art. 3, §§ 10 and 14. We are free to adopt protections of our own, so long as we do not diminish federal rights. Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); State ex rel. McLendon v. Morton, W.Va., 249 S.E.2d 919 (1978). But Justice Brennan's analysis in Dickey is pertinent and helpful.
One facet of a citizen's due process protections is the right to have the government accuse him of a crime within a reasonable time from discovery of its commission *398 and determination reasonably reached, that he or she did the criminal act.[3] It is the government's duty to proceed with reasonable diligence in its investigation and preparation for arrest, indictment and trial. If it fails to do so after discovering sufficient facts to justify indictment and trial, it violates this due process right. Of course, the right itself arises from the substantial prejudice that is presumed to affect a defendant's ability to respond to charges against him when the charges are time-worn and stale.
Justice William H. Rehnquist perceptively recognized in Thomas v. Washington Gas Light Co., ___ U.S. ___, ___, 100 S.Ct. 2647, 2666, 64 L.Ed.2d 757 (1980), that "[w]henever this Court, or any court, attempts to balance competing interests it risks undervaluing or even overlooking important concerns." And so a balancing test weighing prejudice to a defendant against length of and reason for delay, similar to the one applied by the Supreme Court to speedy trial right violations in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is suspect, because it puts to judicial subjective judgment, with its consequential risks of overlooking or undervaluing important matters, the liberty of people. A two-week delay could result in substantial prejudice, such as the unexpected death of an exculpatory witness; and yet this fortuity should not work against the state. A five-year delay might cause no such clear-cut loss, but misrecollections and forgetfulness are equally as damaging. If a five-year delay were caused by police or prosecutorial inertia, prosecution should be barred. Divining and "weighing" prejudice will not be easy, but our courts must attempt it when the delay is of questionable length.
Eleven years have passed between the identification, location and connection of defendant with a criminal act, and his formal accusation. We hold there is prima facie prejudice to him and infringement upon his constitutional right to due process of law.
We remand this action to the trial court to give the government an opportunity to justify the delay by proving its reasonableness. If the state fails, defendant is entitled to dismissal of the indictment.
We expect not to have a case such as this again, because in State ex rel. Dowdy v. Robinson, W.Va., 257 S.E.2d 167 (1979), and State ex rel. Johnson v. Hamilton, W.Va., 266 S.E.2d 125 (1980), we held that all criminal charges arising from a single criminal episode must be brought contemporaneously, and that successive prosecutions will be prohibited by the double jeopardy clause. We need not now decide whether Leonard should benefit from this rule.
The government questions the propriety of this pretrial prohibition proceeding. We held in Hinkle v. Black, W.Va., 262 S.E.2d 744, 748 (1979), that prohibition will lie after consideration of "two functional criteria: first, the adequacy of another remedy such as an appeal; second, economy of effort among litigants, lawyers and courts."
[T]his Court invites opportunities to correct substantial, clear-cut, legal errors where there is the high probability that the trial will be completely reversed if the error is not corrected in advance.. . . [for example] proceedings in direct contravention of a clear, positive command of the State or Federal constitutions; proceedings in contravention of a clear, positive command of a statute. . . . Id. 262 S.E.2d, at 749-50.
*399 Administrative judicial efficiency, if nothing else, compels us to consider this matter before the time and money involved in a trial are expended unnecessarily. Because Leonard claims that the proposed prosecution violates his constitutional speedy trial, double jeopardy, and due process rights, which are "clear, positive command[s] of the State or Federal constitutions", we find that prohibition is proper. Contra, United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).
The writ will be granted and the cause remanded to the trial court with instructions that it hear the government's proof that it acted with reasonable diligence to prosecute defendant once it had sufficient information to do so. If this proof fails, then the indictment should be quashed.
Writ granted as moulded.
MILLER, Justice, concurring:
While I concur in the principles set forth by the majority, there are several additional considerations which I believe merit comment.
It is significant to note that the facts of this case are by no means unique. Numerous state and federal decisions address the issue of renewed prosecution following a prolonged delay occasioned by defendant serving a separate prison term either within or without the state. Whether involving preindictment delay and based on due process grounds, or post-indictment delay and resting on the Sixth Amendment guarantee of a speedy trial, the decisions are nearly unanimous that a prolonged pretrial delay cannot be justified by the defendant's imprisonment on another offense. E.g., Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Prince v. Alabama, 507 F.2d 693 (5th Cir. 1975), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108-09; United States v. Rucker, 464 F.2d 823 (D.C. Cir. 1972); Pitts v. North Carolina, 395 F.2d 182 (4th Cir. 1968); Dufield v. Perrin, 470 F.Supp. 687 (D. N.H. 1979); United States v. Quillen, 468 F.Supp. 480 (E.D. Tenn. 1978), aff'd, 588 F.2d 831 (6th Cir. 1978); People v. Hryciuk, 36 Ill.2d 500, 224 N.E.2d 250 (1967); State v. Davis, 131 N.J.Super. 484, 330 A.2d 601 (1974); People v. Winfrey, 20 N.Y.2d 138, 228 N.E.2d 808, 281 N.Y.S.2d 823 (1967); State v. Johnson, 275 N.C. 264, 167 S.E.2d 274 (1969); State v. Meeker, 26 Ohio St.2d 9, 268 N.E.2d 589 (1971); State v. Milner, 6 Ohio Op.2d 206, 149 N.E.2d 189 (C.P. 1958).
State v. Davis, supra, is similar to the present case. There, the defendant was indicted for two murders. Upon trial and conviction for one of the murders, the defendant was sentenced to death. Consequently, the state proceeded no further with the second prosecution. Nine years later, in an unrelated case, the New Jersey Supreme Court ruled the death penalty to be unconstitutional. As a consequence, the death penalty of the defendant in Davis was commuted to life imprisonment, allowing, under New Jersey law, his eligibility for parole. The prosecution for the second murder was then reactivated, which would have produced a total of an eleven-year pretrial delay.
The court acknowledged that where the maximum sentence has been imposed, further prosecution might be pointless and inexpedient. Nevertheless, the court refused to allow renewed prosecution following commutation of the initial sentence, since the defendant had neither caused nor contributed to the eleven-year delay. The court held that: "The consequences of the unilateral and ex parte action taken by the State in the service of its own interest cannot, in justice, be visited upon this defendant." [330 A.2d at 607].
In People v. Hryciuk, 36 Ill.2d 500, 224 N.E.2d 250 (1967), the court considered a preindictment delay of fourteen years during which the defendant served a separate prison term. The defendant initially had confessed to independent acts of rape and murder, but was indicted and convicted of the charge of rape only. Fourteen years later, in a post-conviction proceeding, the defendant was granted a new trial on the rape conviction, and the following day was indicted for the murder.
In reversing the murder conviction as a violation of due process and the right to a speedy trial, the Illinois court noted:

*400 "[At the time of the rape prosecution] the State had all the evidence on the murder charge that it would ever have, but made a deliberate election to forego prosecution for this offense and tried the defendant on the rape charge. . . . It is probably a fair inference that if defendant had not been released on the rape conviction the murder charge would never have been brought. It is not necessary to find that the prosecution acted in bad faith and we do not so find. It is enough . . . that the delay was a deliberate and calculated one. From a delay of 14 years a presumption of prejudice arises." [224 N.E.2d at 252].
The fact that a defendant is in prison for one offense does not curtail his right to a speedy trial on an additional offense. When the defendant is in custody and available for trial and has not actively impeded his own prosecution, and where the state's evidence against the defendant is complete, but the state refrains from prosecuting for no apparent reason other than that the defendant is already incarcerated, the incarceration alone may not provide justification for the delay. Furthermore, it is apparent from case law that courts have applied this principle where the time periods involved are significantly shorter than the eleven-year period involved in the present case. United States v. Quillen, supra (oneyear preindictment delay while serving separate sentence in same jurisdiction); United States v. Rucker, supra (eighteen-month post-indictment delay while serving separate sentence); Dufield v. Perrin, supra (three-year post-indictment delay while serving separate sentence in same jurisdiction); State v. Johnson, supra (four-year preindictment delay while serving separate sentence in same jurisdiction); People v. Winfrey, supra (four and one-half year preindictment delay while serving separate out-of-state sentence); State v. Meeker, supra (six-year preindictment delay while serving separate sentence in same jurisdiction); Prince v. Alabama, supra (nine-year post-indictment delay while serving separate out-of-state sentence).
We have made much the same point in our line of cases that require the State to proceed with reasonable diligence to procure the presence of the accused who is incarcerated out-of-State so that he may be promptly tried in this State. State v. Fender, W.Va., 268 S.E.2d 120 (1980); State ex rel. Boso v. Warmuth, W.Va., 270 S.E.2d 631 (1980); State ex rel. Stines v. Locke, W.Va., 220 S.E.2d 443 (1975).
The forms of prejudice suffered by a defendant whose trial is delayed while he is incarcerated on another offense were catalogued by the United States Supreme Court in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). The decision involved a six-year post-indictment delay of a state charge while the defendant served a separate federal sentence. In upholding the speedy trial right of a prisoner serving a sentence imposed by another jurisdiction, the Court stated:
"First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.
"And while it might be argued that a person already in prison would be less likely than others to be affected by `anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. Klopfer v. North Carolina, supra, 386 U.S [213] at 221-222, 87 S.Ct. [988] at 992-993 [18 L.Ed.2d 1].
"Finally, it is self-evident that `the possibilities that long delay will impair the ability of an accused to defend himself are markedly increased when the *401 accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while `evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." [393 U.S. at 378-80, 89 S.Ct. at 577-78, 21 L.Ed.2d at 611-12].
The concern of the United States Supreme Court regarding the lost opportunity for concurrent sentencing has been shared by a number of state and federal courts. Prince v. Alabama, 507 F.2d 693 (5th Cir. 1975), cert. denied, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108-09; United States v. Rucker, 464 F.2d 823 (D.C. Cir. 1972); Dufield v. Perrin, 470 F.Supp. 687 (D. N.H. 1979); State v. Johnson, 275 N.C. 264, 167 S.E.2d 274 (1969); State v. Milner, 6 Ohio Op.2d 206, 149 N.E.2d 189 (C.P. 1958).
The Ohio court pointed out in Milner that concurrency of sentence rests with the court and the prosecution should not be able to usurp this right by delaying prosecution where multiple offenses are involved. Moreover, it noted that a delayed prosecution after service of a sentence to the point of release on parole has the effect of abrogating the parole board's decision that rehabilitation has occurred:
"Delaying the indictment and the trial on one offense after another, until time is served on each consecutively, and served under circumstances described, is a denial of a speedy trial. . . .
"The exercise of such control over a form of installment punishment, compounded by detainers, is a usurpation of the power of the court, of the jury, and of the parole board to determine guilt and punishment under the indeterminate sentence law. Whether consecutive or concurrent sentences should be imposed for more than one offense rests exclusively with the court and it cannot be assumed by any other agency." [149 N.E.2d at 191-92].
In the present case, the State, at the time of the sentence of life without mercy, had good reason to consider further prosecution superfluous. Yet, in light of the 1974 commutation and the forthcoming eligibility for parole, the State, for that reason alone, may not now reverse its decision and force the defendant to bear the burdens of an elevenyear preindictment delay. To do so would be to improperly allow the prosecution to override the court's authority to impose concurrent sentencing, the Governor's authority to commute, and the parole board's authority to parole.
Consequently, I believe that on remand, unless the prosecution can demonstrate a reasonable ground for delay beyond that of the incarceration of the defendant on his early sentence, the indictment should be dismissed.
NOTES
[1] We calculate that according to defendant's assertion relied upon by the court, there was a delay, at most, from 1971 when a coroner had sufficient evidence of the crime, until trial in January Term, 1974; and that the statement that the delay was six and three-quarters years, involved a count from the date of death of the victim in May, 1967, until Daniels' arrest, presumably in January, 1974. The court did not consider that four of those years should not be counted against the state because the crime had either not been discovered, or its perpetrator not closely enough connected with it to warrant arrest or indictment.
[2] For an excellent survey of the circuit split, see United States v. Alderman, 423 F.Supp. 847 (D.Md.1976) (dismissing an indictment after a thirty-month intentional delay), and cases cited therein. See generally, Lite, The Pre-Accusation Delay Dilemma, 10 Seton Hall L.Rev. 539 (1980); Comment, Criminal Procedure: Due Process Requires Dismissal of Charges Where Government Preindictment Delay Prejudices Defense, 61 Minn.L.Rev. 509 (1977); Preaccusation Delay as Violation of Due Process: Absence of Statute of Limitations Is Factor To Be Weighed Against Murder Defendant's Allegations of Actual Prejudice, 49 Wash.L.Rev. 973 (1974).
[3] Apparently contra is Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374, 386 (1966), rehearing denied, 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880: "There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

This writing presents an exacerbatingly stark black-and-white portrayal of the consequences of a requirement that the government proceed with some reasonable alacrity to arrest and prosecute persons accused of criminal acts.