PEOPLE v McGEE, No. 90842; Court of Appeals No. 123414.

*Interlocutory Appeal*

*Leave to Appeal Denied September 13, 1991:*

PEOPLE v GREEN and PEOPLE v MORRIS GIBBS, Nos. 90296, 90313; Court of Appeals No. 116671.

CAVANAGH, C.J. I would grant leave to appeal.

LEVIN, J. *(dissenting).* I would grant leave to appeal or remand for a further evidentiary hearing.

I

On the afternoon of September 28, 1982, Dwayne Davis was shot and killed in Detroit in an apparent territorial dispute among drug dealers. Over five years later, on July 14, 1988, a complaint and

warrant were issued charging Keith Green and Morris Gibbs[1] with first-degree murder[2] and the use of a firearm during the commission of a felony.[3] The trial court dismissed these charges for prejudicial prearrest delay.[4]

The Court of Appeals reversed and remanded for trial.

The charges lodged against Green and Gibbs culminated a state-federal investigation of "Young Boys, Inc." In 1982, the state had no evidence implicating the defendants.[5] In February, 1985, however, Kevin Wilson, a trafficker in heroin, came forward and offered information regarding Young Boys and related activities.[6] Wilson said that he had witnessed Davis' murder and that Gibbs and Green had committed it.

During the Young Boys investigation, the state entered into several compacts with federal authorities, pursuant to which prosecution of state cases was deferred. In particular, the state agreed not to file charges against Green and Gibbs until a federal grand jury investigation was concluded. The complaint and warrant were issued almost exactly a year after completion of the investigation.

II

The Detroit Recorder's Court dismissed the charges against Green

---

[1] Other defendants were named in related prosecutions, but only Green and Gibbs were accused of the actual killing.

[2] MCL 750.316; MSA 28.548.

[3] MCL 750.227b; MSA 28.424(2).

[4] The trial court dismissed the case on the ground of prejudicial prearrest delay on March 21, 1989. Motions asserting successive prosecutions, double jeopardy, and forum shopping were denied.

[5] On October 9, 1982, Gibbs was arrested by the Detroit Police and was questioned by the Homicide Division concerning Davis' death. Gibbs testified during pretrial hearings in this case, on March 17, 1989, that when the police asked his whereabouts at the time of the shooting, he provided the names of alibi witnesses, and was released the same day. He was not asked to write or sign a statement, but recalled that one of the police officers took notes of what he told them. City and state authorities are apparently unable either to contradict or confirm Gibbs' testimony on this point because, as set forth in the prosecution's brief in the Court of Appeals, their records are devoid of any memoranda of the interview apart from "a piece of paper in the police file indicat[ing] that defendant Gibbs was arrested on October 9, 1982, and turned over to the Homicide Section for investigation."

The record indicates that Green turned himself in to federal authorities in response to a homicide warrant arising out of Davis' death in April, 1988. He presented himself to state authorities, pursuant to the state warrant, in June, 1988.

[6] At the time of this first offer, Wilson was in federal custody. He has since been placed in the Federal Witness Protection Program.

and Gibbs. Ruling from the bench, the judge said that an accused seeking dismissal for delay of prosecution on due process grounds

> must show, first, that [he] has been prejudiced by a delay. . . . When the Defendant shows prejudice it then becomes incumbent upon the Prosecution to show . . . [t]hat the delay was explainable, that it was not deliberate, and that whatever prejudice enured to the . . . Defendant was not undue.[7]

The defendants were found to have suffered prejudice as a result of the delay because witnesses who could have corroborated the defendants' testimony, or contradicted testimony of the prosecution witness, were no longer available. While the judge did not elaborate on this finding, the record shows that the delay reduced the availability of the following testimony.

First, both defendants claimed to have lost alibi witnesses because of the delay. Gibbs testified that he spent the entire day of the shooting with his stepfather, who died January 9, 1986, and a friend and former coworker of the stepfather, whose last name and whereabouts Gibbs did not know. Green named as an alibi witness a woman who lived in his aunt's house, who, Green testified, awakened him shortly after the shooting to tell him that Davis had been killed. This witness died in May, 1988.

Second, Wilson, the prosecution witness, testified that, immediately after the shooting, he discussed what he had seen with an associate, Raymond Peoples. Peoples, too, is believed to have died in 1985, before the issuance of state warrants against the defendants.

Third, the Detroit Police, within a few days of the shooting, knew of at least eight civilian eyewitnesses, in addition to Wilson, who were in the immediate vicinity when the shooting took place. By the time of the evidentiary hearings, only two or three could be traced, and none was available to appear at the hearings.[8] Several witnesses, however, had given statements to the police shortly after the shooting. *None of these witnesses identified either defendant as having been involved in the crime.* Further, Wilson testified that Green and Gibbs both fired

---

[7] March 21, 1989 hearing. See *People v Bisard*, 114 Mich App 784 (1982); *People v Hernandez*, 15 Mich App 141 (1968).

[8] There is evidence in the record tending to show that, even before the specific agreement to defer prosecution in this case, the state had not been diligent in tracing and interviewing res gestae witnesses, and did not timely notify defense counsel of their names. See MCL 767.40, 767.40a; MSA 28.980, 28.980(1), governing the duties of the prosecutor to provide such information and assist the defendants in locating res gestae witnesses.

To the extent, if any, that the prior res gestae witness rule would have imposed on the prosecution in this case a greater burden of diligence, the delay may have prejudiced the defendants, first, because of the loss of access to such witnesses through the mere passage of time; second, because of the loss of defendants' right to insist on greater diligence by the prosecutor in locating them.

shots at Davis and then *walked away,* but two of the res gestae witnesses' contemporary statements indicated that, although the defendants were not present at the scene of the shooting, one or two men *ran away* immediately after the shooting. Similarly, while Wilson testified that no one but Davis and the defendants were at the scene, the police investigation in 1982 produced at least two witnesses who asserted that Davis was accompanied by one or two men, other than the defendants, as he walked toward the corner where he was shot.

Testimony at the hearing, and the people's briefs, also indicate that the police failed to maintain a record of statements Gibbs made to the Homicide Division on October 9, 1982 (see n 5). The testimony indicates that no officer involved in the investigation is able to recall what Gibbs told the police during this interview. Again, if Gibbs indeed gave the police an alibi in October, 1982, the people would be unable to confirm that he had done so before the death of his stepfather in January, 1986. Delay would be prejudicial because it leaves Gibbs unable to counter an assertion that he fabricated a defense on the basis of a "conveniently" deceased alibi witness.

The authorities obtained no further information from Wilson after a date about three years before the issuance of the complaint and warrant. A year elapsed between the end of the benchmark grand jury proceeding and institution of state charges; during this period, and beginning some months before, the people have acknowledged that there was a warrant in the file. Also, Wilson testified as a prosecution witness in open federal court proceedings in late 1987.

III

The prosecutor offered the following reasons in justification of the delay: the ongoing federal investigation, the risk that state court discovery of grand jury testimony before the return of indictments could compromise the grand jury's functioning, concern for the safety of any grand jury witnesses who were not in the Federal Witness Protection Program, and the risk to any relevant witnesses who *were* in the program, whom the defendants in the instant case might wish to interview.

The judge acknowledged the validity of these reasons, but found that the delay was excessively protracted and, by the state's concession, deliberate. Balancing the effect of the delay on the defendants against the government's reasons for the delay, the court found that the defendants had been unduly prejudiced by the state's conduct.

IV

The Court of Appeals held that the findings of the judge were clearly erroneous. After a brief description of the defendants' testimony concerning potential alibi witnesses, the Court of Appeals said: "The other evidence against the defendants was great, and so any

resulting prejudice would be slight." Unpublished opinion per curiam of the Court of Appeals, decided August 9, 1990 (Docket No. 116671), p 2.

There is no support in the record for the assertion that there was "other evidence" tending to incriminate the defendants. The *entire* case against the defendants, on the record so far made, consists of Wilson's testimony. Neither in pretrial hearings nor in the prosecutor's briefs has any other evidence been presented or suggested.[9]

While Wilson's testimony provided probable cause to bind the defendants over for trial, his testimony does not constitute overwhelming evidence of guilt. Only such evidence, I believe, would permit a court to conclude that "*any* prejudice" the defendants suffered as a result of loss of alibi witnesses, whose testimony might have exonerated Gibbs and Green altogether, was necessarily so "slight" as to merit no further consideration.

Further, the Court of Appeals made no mention of prejudice to the defendants other than that occasioned by the loss of alibi witnesses. As noted above, the delay also may have deprived the defendants of the testimony of other witnesses who may have contradicted the testimony of the sole prosecution witness. The delay dulled the memory of at least one important witness: the police officer who interviewed Gibbs two weeks after the shooting.

The Court of Appeals may have adopted an improper standard in assessing the relative burdens on the prosecution and the defendants when a claim of prejudicial delay has been raised. The Court's analysis appears to place the defendant in the position of carrying the entire burden of persuasion where the prosecution presents any colorable reason for the delay.

The exact degree of prejudice is unclear on the record presented. Given the exceedingly long delay in bringing charges, however, I would grant leave to appeal or, in the alternative, remand the case to the trial court for further evidentiary hearings.

Reconsideration denied March 6, 1992.

LEVIN, J. Although the opinion of the Court of Appeals is unpublished, I would, as set forth in my dissenting statement in *People v DeBoom,* 439 Mich 919 (1992), grant reconsideration, and on reconsideration would

> grant leave to appeal to consider whether the lengthy, deliberate prearrest and pretrial delay was violative of the defendant's rights under the Due Process Clause of the Constitutions of this state and the United States. See *United States v Dreyer,* 533 F2d 112 (CA 3, 1976); *State ex rel Leonard v Hey,* 269 SE2d 394 (W Va, 1980); *People v Gulley,* 83 Ill App 3d 1066 (1980).

---

[9] The only exception is the state's reference, during evidentiary hearings, to testimony that might be elicited from the two res gestae witnesses whose whereabouts are currently known. These witnesses both gave statements to police shortly after the shooting that are incompatible with Wilson's description of the event.

Cf. *United States v Juarez,* 561 F2d 65 (CA 7, 1977); *United States v Golden,* 436 F2d 941 (CA 8, 1971).