445 So.2d 687 (1984)
STATE of Florida, Appellant,
v.
Stephen Joseph LYNCH, Appellee.
No. 83-1562.
District Court of Appeal of Florida, Second District.
February 22, 1984.
*688 Jim Smith, Atty. Gen., Tallahassee, and James H. Dysart, Asst. Atty. Gen., Tampa, for appellant.
James D. Eckert of Eckert & Nelson, St. Petersburg, for appellee.
HOBSON, Acting Chief Judge.
The state appeals an order granting Stephen Joseph Lynch's motion to discharge an information charging him with the offense of possession of cocaine due to the state's purported failure to comply with Florida Rule of Criminal Procedure 3.191, the speedy trial rule. We reverse and remand.
On March 31, 1983, the state filed an information accusing Lynch of committing the felony of possession of cocaine on July 24, 1982. Lynch was eventually arrested on the cocaine possession charge on May 10, 1983. On June 9, 1983, Lynch filed a motion to discharge under Rule 3.191.
Section (a)(1) of Rule 3.191 states that a person charged with a felony shall without demand be brought to trial within 180 days from the date that he "is taken into custody as defined under section (a)(4)." Subsection (i) of section (a)(4), which is the applicable subsection under our facts, provides that a person is taken into custody "when the person is arrested as a result of the conduct or criminal episode which gave rise to the crime charged."
Lynch averred in his Rule 3.191 motion to discharge that the alleged offense of possession of cocaine occurred at the same time and location as an alleged offense of battery of a law enforcement officer; that the alleged crime of battery of a law enforcement officer had been dismissed on speedy trial grounds on May 17, 1983; and that, as a result, the same relief should apply to the cocaine possession charge.
At a hearing on Lynch's motion to discharge, Detective Paul Smith of the Pinellas County Sheriff's Office testified that at about 1:30 a.m. on July 24, 1982, he and Detective Poorbaugh were sitting inside an unmarked squad car outside a local tavern known as the 49th Street Mining Company. They observed Lynch in the parking lot take a small bottle out of his pocket, remove the top, and sniff the contents. They then saw Lynch offer the bottle to a male and female, both of whom also sniffed the substance. Suspecting that the substance "might" be cocaine because of the actions of the three, the officers, who were dressed in plain clothes, approached Lynch. Immediately after the officers identified themselves, Lynch threw the bottle, despite Detective Smith's attempt to prevent the throw, and then Lynch shoved Detective Smith backwards. Detective Poorbaugh promptly arrested Lynch for battery of a police officer.
Detective Smith testified further that the bottle thrown by Lynch was never located, having landed in a heavily wooded area. However, the bottle's plastic cap and some cotton were recovered shortly after Lynch's arrest on the battery charge. No presumptive tests for cocaine were performed at the scene due to an insufficient amount of substance for testing. The bottle cap and cotton were submitted to a forensic laboratory for analysis. The analysis, which was completed on November 2, 1982, revealed traces of cocaine on the bottle cap. Lynch was not arrested for the offense of possession of cocaine on July 24, 1982, because Detective Smith was of the belief that he lacked probable cause at that time to arrest Lynch for that offense.
After the hearing, the trial court rendered an order granting Lynch's motion to discharge under Rule 3.191, deciding that "the conduct giving rise to the charge of possession of cocaine ... arose from the same conduct or criminal episode giving rise to the charge of battery of a police officer ..., which charge was dismissed [on] May 17, 1983" pursuant to an earlier Rule 3.191 motion to discharge.
On appeal, the state voices its disapproval with the trial court's conclusion that the 180-day speedy trial time period for the cocaine possession charge began to run on July 24, 1982, the date of Lynch's arrest for the charge of battery of a law enforcement *689 officer. Relying on the cases of Walker v. State, 390 So.2d 411 (Fla. 4th DCA 1980), and State v. Hoesley, 427 So.2d 1077 (Fla. 2d DCA 1983), which it asserts are both analagous to the instant case, it maintains that the two charges occurred during separate criminal episodes. It therefore reasons that the speedy trial time period for the charge of possession of cocaine did not begin to run until May 10, 1983, the date Lynch was placed into custody for that charge. Lynch responds, citing the case of State v. Kelly, 407 So.2d 257 (Fla. 2d DCA 1981), that the trial court correctly held that the two alleged offenses were elements of a single criminal episode. He believes that there was only one criminal episode since the alleged crime of battery of a law enforcement officer was committed only because of Detective Smith's investigation of the alleged offense of possession of cocaine.
We concur with the state that the trial court erroneously discharged Lynch on the cocaine possession charge. Kelly, which Lynch points to for support, actually hurts his position. In Kelly, we endorsed the Rule 3.191(a)(4) definition of "criminal episode" which says that a criminal episode demands more than a relationship between separate offenses; it requires that the same conduct or episode give rise to different offenses. 407 So.2d at 259. In applying this definition to the facts in Kelly, we upheld a trial court's order which granted the defendant's motion to discharge him under Rule 3.191 for the offense of trafficking in a .45 caliber pistol. This offense transpired during a single sale by the defendant of the .45 caliber pistol and a .38 caliber pistol. Kelly was not arrested for the crime of trafficking in the .45 caliber pistol until more than 180 days had elapsed from the date of his arrest for the offense of trafficking in the .38 caliber pistol.
The definition of "criminal episode" which we employed in reaching our decision in Kelly actually originated from the Fourth District Court of Appeal's pronouncement in Walker that the conduct resulting in the separate crimes must be "not merely related," but "the same conduct." 390 So.2d at 412. In Walker, our sister court used this definition to affirm a trial court's order which denied the defendant's motion to discharge under Rule 3.191 for the felony of vehicular homicide. The conduct involved in the vehicular homicide was separate and apart from the defendant's subsequent criminal conduct of leaving the scene of an accident, for which he was arrested more than 180 days prior to his arrest for the vehicular homicide.
Taking its cue from Walker, the Third District Court of Appeal in State v. Stanley, 399 So.2d 371 (Fla. 3d DCA 1981), also held that "[i]t is not enough that the conduct resulting in separate offenses be related; the conduct or episode must be the same even though it may give rise to different consequences." Id. at 373.
This succinct, accurate, and easy-to-apply definition of "criminal episode" is entirely consistent with the majority of holdings in cases dealing with the issue at bar. See, e.g., Carter v. State, 432 So.2d 797 (Fla. 2d DCA 1983) (defendant entitled to discharge under Rule 3.191 for the crime of causing a death by the operation of a motor vehicle while intoxicated since the offense occurred while he was engaged in the crime of driving while his license was suspended or revoked, for which he was placed in custody more than 180 days before his arrest for causing a death by the operation of a motor vehicle while intoxicated); Hoesley (defendant not entitled to discharge under Rule 3.191 for a charge of possession of cocaine because the cocaine was discovered during an inventory search incident to impoundment of his car after he was stopped and arrested for the offense of driving under the influence of alcohol, for which he was arrested more than 180 days before his arrest for the crime of possession of cocaine); Kelly; Walker; Robinson v. Lasher, 368 So.2d 83 (Fla. 4th DCA 1979) (defendant entitled to discharge under Rule 3.191 for the crime of manslaughter because the manslaughter was committed while he was engaged in the crime of reckless driving, for which he was placed in *690 custody more than 180 days before his arrest for the offense of manslaughter); Deloach v. State, 338 So.2d 1141 (Fla. 1st DCA 1976) (defendant entitled to discharge under Rule 3.191 for the offense of operating an automobile while intoxicated because the offense was the same conduct which resulted in the crime of manslaughter, for which he was arrested more than 180 days before his arrest for the offense of operating an automobile while intoxicated).
Applying this definition of "criminal episode" to the facts in this case, it is plain that Lynch engaged in two criminal episodes. The separate alleged offenses of possession of cocaine and battery of a law enforcement officer were related, to be sure, but they were not the result of the same conduct or episode. Thus, Lynch is not entitled to a discharge under Rule 3.191 for the cocaine possession charge.
We recognize that two cases relied upon by Lynch cannot be reconciled with the definition of "criminal episode" which requires that the separate offenses arise from the same conduct or episode: Crain v. State, 302 So.2d 433 (Fla. 2d DCA 1974), and Deiches v. Kaney, 375 So.2d 584 (Fla. 5th DCA 1979). In Crain, the defendant was arrested for the offense of driving an automobile while under the influence of a prohibited drug. During the investigation of the incident, the police discovered marijuana in the trunk of his car. He was not arrested for possession of a felony amount of marijuana until more than 180 days after his arrest for the crime of driving an automobile while under the influence of a prohibited drug. This court held that the two offenses stemmed from the same criminal episode, thus entitling the defendant to be discharged under Rule 3.191 for the marijuana possession charge. It seems clear that the separate crimes were, at most, related, which, of course, is not enough to satisfy the currently accepted definition of "criminal episode." Thus, to the extent that Crain appears inconsistent with our holding today and with our decisions in Carter, Kelly and Hoesley, Crain yields.
In Deiches, the defendant attempted to pass a forged prescription at a drugstore. Immediately upon his exit from the store, the police followed his car and cornered him in a dead-end alley, where he was promptly arrested for the offense of loitering and prowling. However, he was not arrested for the crime of unlawfully attempting to acquire possession of a controlled substance by attempting to pass the forged prescription until more than 180 days had elapsed since the date of his arrest for the loitering and prowling offense. The Fifth District Court of Appeal held that the two offenses occurred during a single criminal episode and thus quashed an order denying Deiches' motion to discharge him on the charge for attempted forgery. We disagree with the holding in Deiches because it suggests that a charge may be dismissed under Rule 3.191 merely because it is related to another charge which occurred in the same general vicinity during the same general time frame. In our view, such a definition of "criminal episode" is overly broad and is easily susceptible of inconsistent applications.
Given that there were two criminal episodes in the case at bar, it is unnecessary to address the "probable cause" issue which was also raised by the parties.
Accordingly, we reverse the order discharging the information accusing Lynch of the offense of possession of cocaine and remand for proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
RYDER and CAMPBELL, JJ., concur.