BERGER, J.
The State of Florida appeals the trial court’s order forever discharging Bret Warren for the crimes of burglary and theft based on a speedy trial violation. See Fla. R. Crim. P. 3.191. The State argues the trial court erred in concluding that the charges involved the same conduct and criminal episode as a prior arrest that occurred more than 175 days before the information was filed. We agree and reverse.
On April 8, 2013, Orlando Police Officer James Strawn, was flagged down by a custodian at the University of Central Florida (UCF) Education Complex regarding a suspicious person. While investigating, Officer Strawn observed Warren on the second floor of the education building. He ordered Warren to sit down, told Warren he was under arrest, and placed him in handcuffs. Officer Strawn removed the cuffs after he told Warren he would not file charges if Warren provided his real name and the reason he was in the building.[1] According to Officer Strawn, he told Warren he would arrest him for loitering and prowling if he could not confirm his name. At this point in time, Warren was not free to leave. Officer Strawn indicated he wanted to verify Warren’s identity and make sure he did not have any outstanding warrants. At some point thereafter, Warren provided his correct information and gave Officer Strawn permission to search his backpack.[2] He was released and given a trespass warning after Officer Strawn verified his identity and confirmed that there were no warrants for his arrest. Warren was not allowed to drive home, however, because he had a suspended driver’s license.
While waiting for Warren’s truck to be towed, Officer Strawn inquired about a trinket found inside Warren’s backpack. Warren told Officer Strawn he got the trinket for his girlfriend. Officer Strawn did not know whether the trinket was stolen, but, suspecting it had been, told Warren that if it was stolen and he returned it, Warren would not be charged with theft.
After several minutes, Warren approached Officer Strawn, who was speaking with another officer, and confessed to stealing the trinket. Warren also told Officer Strawn that he had other stolen items in his truck. After the two went through Warren’s truck and separated out the stolen items, Warren led Officer Strawn through the education building to room 220, which was unlocked. Warren indicated he took the property from room 220. Prior to entering room 220, they tried the door to room 205, but it was locked. Warren did not indicate that any items were taken from room 205. He was allowed to leave.
On June 7, 2013, Officer Strawn and a detective reviewed surveillance video of room 205. The video revealed Warren using a yellow rag to open desk drawers. Police later learned that some of the items stolen from room 205 were recovered on April 8, 2013, during Officer Strawn’s initial encounter with Warren. Two of those items, a banking deposit book and a voice recorder, were identified by the victim, Eric Brewington, as having been stolen *340 from room 205. Thereafter, an arrest warrant was issued. Warren was arrested pursuant to the warrant on July 18, 2013.
On October 8, 2013, the State filed an information charging Warren with a single count of burglary and a single count of theft, alleged to have occurred over a three day timespan, encompassing both rooms and multiple victims. Specifically, the information alleged in Count 1 (Burglary) that between April 7 and April 10, 2013, Warren “in violation of Florida Statutes 810.02(l)(b)l. [sic] and 810.02(4)(a), enter[ed] into a structure, located in the vicinity of 4000 Central Florida Boulevard, Education Building ... with the intent to commit an offense therein, at a time said premises were not open to the public, nor was the defendant licensed or invited to enter.” As to Count 2 (Petit Theft),[3] the information alleged that between April 7 and April 10, 2013, Warren “did, in violation of Florida Statute 812.014(3)(c), knowingly obtain or use, or endeavor to obtain or use the property of another, to-wit: jewelry or a trinket or office supplies, of a value of less than [$300].... ” The information identifies the victims as UCF or Laurence Jaffe or Eric Brewington.
On March 14, 2014, Warren filed a motion for discharge pursuant to Florida Rule of Criminal Procedure 3.191. In his motion, Warren alleged that he was arrested for the offenses charged in the information on April 8, 2013 and that the State’s failure to charge him within the 175-day speedy trial period entitled him to discharge. After a hearing, the trial court agreed, concluding:
But nonetheless, I — for purposes of this case, the court’s going to find that the arrest — the arrest occurred on April 8th, because I find the defendant’s testimony to be more credible and straightforward than that of the officer.
So my ruling is based on the candor, credibility and testimony of both the officer and the defendant in this matter. The court will find that the clock began to tick on April the 8th.
This appeal followed.
Florida’s speedy trial rule requires the State to bring a defendant to trial within a specified time from the date the defendant is taken into custody as a result of the conduct or criminal episode that gave rise to the crime charged. See Fla. R. Crim. P. 3.191(d); State v. Williams, 791 So.2d 1088, 1091 (Fla.2001) (citing Genden v. Fuller, 648 So.2d 1183, 1184-85 (Fla.1994)); State v. Pelham, 99 So.3d 599, 601 (Fla. 5th DCA 2012) (en banc) (citing Williams, 791 So.2d at 1091). Custody begins when a person is either arrested or served with a notice to appear in lieu of physical arrest. See Fla. R. Crim. P. 3.191(d). The rule is a “procedural protection and, except for the right to due process under the rule, does not reach constitutional dimension.” State v. Bivona, 496 So.2d 130, 133 (Fla.1986) (citing Barker v. Wingo, 407 U.S. 514, 521-25, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Its purpose is to “ ‘promote the efficient operation of the court system and to act as a stimulus to prosecutors to bring defendants to trial as soon as practicable, thus minimizing the hardships placed upon accused persons awaiting trial.’ ” State v. Agee, 622 So.2d 473, 475 (Fla.1993) (quoting Lewis v. State, 357 So.2d 725, 727 (Fla.1978)). In Florida, the speedy trial rule requires the State to bring a defendant to trial on a felony within 175 days where the defendant has not demanded a speedy trial. See Fla. R. Crim. P. 3.191(a)(1).
*341 It is well settled that the State may not circumvent the purpose and intent of the speedy trial rule by taking no action after the defendant is arrested and waiting until after the speedy trial period has expired to file, formal charges. See Williams, 791 So.2d at 1091 (holding that speedy trial time begins to run when an accused is taken into custody and continues to run even if the State does not act until after the expiration of that speedy trial period). Here, the question we must resolve is whether Warren was arrested on April 8, 2013, for the crimes set forth in the information. If so, pursuant to Williams, he is entitled to discharge. See 791 So.2d at 1091.
The State does not contest the fact that Warren was arrested for loitering and prowling on April 8, 2013, nor does it challenge the trial court’s credibility determination on this point; rather, it contends that the trial court’s finding is not disposi-tive of the speedy trial issue, because in addition to being arrested, the arrest must be for the same conduct or criminal episode. The State maintained that because the April 8, 2013 arrest was not for the same conduct or criminal episode charged in the information, discharge was improper.[4] We agree.
Crimes can constitute separate criminal episodes for speedy trial purposes even though they happen at the same time. See Pelham, 99 So.3d at 602-03 (citing State v. Lynch, 445 So.2d 687, 690 (Fla. 2d DCA 1984)) (determining burglary and theft charges filed in 2012, were different from 2010 loitering and prowling arrest, where charges were not based upon the “same conduct” or “same act,” even though crimes occurred on the same date); Clevenger v. State, 967 So.2d 1039, 1041 (Fla. 5th DCA 2007) (finding that charge of aggravated battery and murder were separate crimes from misdemeanor counts of battery charged previously because the aggravated battery and murder involved different crimes and a different victim even though all of the crimes occurred during the same altercation). This is so when the crimes involve distinct acts against different victims. See Clevenger, 967 So.2d at 1041; see also State v. Brandt, 460 So.2d 444 (Fla. 5th DCA 1984) (finding that two sexual batteries that occurred at the same location in the same time period did not equal the same crime, because there were two victims). There are times, however, as explained by Clevenger, where crimes against different persons stemming from the same singular act constitute one criminal episode, 967 So.2d at 1041-42 (distinguishing State v. Clifton, 905 So.2d 172 (Fla. 5th DCA 2005), in which this Court found that multiple charges, involving multiple victims, that all arose from the single act of setting a fire constituted one criminal episode). Additionally, crimes that occur on different days, not as a part of one uninterrupted event, are not part of the same criminal episode. State v. Hanna, 858 So.2d 1248, 1250 (Fla. 5th DCA 2003).
This case is similar to Pelham. See 99 So.3d at 599. In Pelham, law enforcement responded to a vehicle burglary complaint. Id. at 600. The victim reported that someone had broken a window of his car, triggering his car alarm. Id. The victim could *342 not identify any missing property, but described two males he observed walking away from the vehicle. Id. The defendant and another man fled on foot when they saw the officers. Id. After a short pursuit, the defendant was detained and advised of his Miranda[5] rights. Id. He denied knowing the other man, could not explain why he fled, and denied breaking into the victim’s vehicle. Id. The following items were found in his pocket: a face plate from a car radio, a cellular phone charging cord, and a Garmin GPS device. Id. at 600-01. The defendant expressed no knowledge of those items and could not explain how they got into his pockets. Id. However, because the victim did not recognize any of the items, the defendant was not arrested for the burglary and theft. Id. at 601. Instead, he was arrested for loitering and prowling. Id. Five hours later, a second victim from the same apartment complex reported a vehicle burglary. Id. The second victim identified the items retrieved from the defendant’s pockets as missing from his vehicle. Id.
The defendant served a jail sentence in 2010 for the loitering and prowling charge. Id. More than a year later, on January 4, 2012, the State filed an information charging the defendant with burglarizing the second victim’s vehicle. Id. The defendant was arrested on those charges on January 5, 2012. Id. Thereafter, defendant’s counsel filed a motion for discharge arguing that the 175-day speedy trial period for the crimes involving the second victim’s property began to run when the defendant was arrested for loitering and prowling on June 30, 2010. Id. The trial court agreed. Id.
Rejecting Pelham’s argument, this Court reversed, finding that the burglary and theft charged in 2012 did not arise from the same “conduct or criminal episode” as the loitering and prowling for which police arrested the defendant in 2010, especially in light of the fact that the conduct that formed the basis for the 2012 charges, the burglary- and theft from the second victim’s car, had' not even been reported to police. Id. at 602 (quoting Baynham, 72 So.3d 796, 798 (Fla. 4th DCA 2011)). In Pelham, this Court wrote:
The question, then, is whether Pelham was arrested in 2010 based upon the “same conduct” or “same act” that forms the basis for the 2012 charges. Clearly, he was not. This is made even more obvious by the fact that at the time of Pelham’s arrest for loitering and prowling, the conduct that formed the basis for the 2012 charges (the burglary and theft from Mr. Boyer’s car) had not even been reported to police. See also Jones v. State, 450 So.2d 605 (Fla. 2d DCA 1984) (rejecting argument that an arrest for one crime could start the speedy trial period for a second crime committed at the same time and place but for which law enforcement had not yet developed probable cause to arrest the defendant); State v. Floyd, 639 So.2d 128 (Fla. 2d DCA 1994) (“ ‘the mere fact that the evidence leading to [a] subsequent charge was first discovered as a result of the original arrest and charge for the initial offense” is insufficient to meet the “same conduct” test).

Id.

Warren attempts to distinguish Pelham by underscoring that in Pelham, the burglary giving rise to the relevant charges, had not been reported at the time Pelham was arrested for loitering and prowling. Warren argues that because he confessed to stealing the trinket' and led Officer Strawn to the location of the theft, there was no temporal break between the loiter *343 ing and prowling arrest and the discovery of the burglary. We find this assertion to be a distinction without a difference. “ ‘[E]ven when the temporal separation [between separate crimes] is not significant, when different crimes are involved, they are not deemed a part of the same criminal episode [for speedy trial purposes] unless they are based on substantially the same acts.” Id. at 601-02 (quoting State v. Hanna, 858 So.2d 1248, 1250 (Fla. 5th DCA 2003)). In other words, “the conduct needs to be more than ‘merely related’ — it should be ‘the same conduct.’ ” Id. (quoting State v. Baynham, 72 So.3d 796, 798 (Fla. 4th DCA 2011)).
Accepting the trial court’s determination that Warren’s testimony was more credible, we nonetheless conclude Warren was not arrested for the burglary and theft of rooms 220 and 205 until July 18, 2013. Indeed, Warren’s testimony conclusively establishes that he was arrested and released prior to Officer Strawn’s discovery of the trinket and before Warren led Officer Strawn to room 220.[6] Thus, like Pelham, the separate incidents of burglary and theft to rooms 220 and 205 were unknown to Officer Strawn at the time Warren was arrested. Although Officer Strawn may have had probable cause to arrest Warren for the burglary to room 220 at some point after Warren was released from custody, having probable cause to arrest is not the same as an arrest. See State v. Christian, 442 So.2d 988, 990 (Fla. 2d DCA 1983) (citing State v. Robbins, 359 So.2d 39 (Fla. 2d DCA 1978)) (determining for speedy trial purposes that it made no difference whether detectives questioning defendant regarding homicide believed they had probable cause to arrest because it was ultimately decided that defendant would not be arrested for the murder). As the Fourth District explained in Baynham, the deciding factor is not the ongoing investigation of law enforcement, but rather the actions of the defendant. 72 So.3d at 799; see also Williams v. State, 409 So.2d 253, 255 (Fla. 4th DCA 1982) (Hurley, J., dissenting) (“Whether crimes form part of a criminal episode depends on the activities of the defendant, not the activities of the police investigating the defendant.” (emphasis added)), receded from by Dupree v. State, 705 So.2d 90 (Fla. 4th DCA 1998) (adopting the rationale of Judge Hurley’s dissent in Williams); State v. Hoesley, 427 So.2d 1077, 1079 (Fla. 2d DCA 1983) (explaining that a defendant arguing that the subsequent charge arose out of an earlier criminal episode “must show more than the mere fact that the evidence leading to the subsequent charge was first discovered as a result of the original arrest and charge for the initial offense”).
Accordingly, we reverse the order of discharge and remand for further proceedings consistent with this opinion.[7]
REVERSED and REMANDED.
PALMER and TORPY, JJ., concur.

. Warren originally gave Officer Strawn a false name, date of birth, and driver’s license number.

. Warren does not contest the search of his backpack.

. Warren was actually charged with Felony Petit Theft, pursuant to section 812.014(3)(c), Florida Statutes, based on having two prior theft convictions.

. In an apparent effort to salvage the charges after the trial court’s ruling, the State urged the trial court to strike only the burglary and theft as to room 220, but to keep the charges as to the burglary of room 205 because those charges stemmed from a second investigation, namely, the viewing of the surveillance cameras. The trial court refused to entertain this request stating, "I don’t have to rule on what it is you’re posing to the court now.” We disagree, but need not reach the issue because we conclude Warren was not arrested for the burglary and theft of either room on April 8, 2013.

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Warren’s testimony was extremely limited in scope. He testified that on April 8, 2013 he was confronted by Officer Strawn on the second floor of a building at UCF. The officer told him to sit down on the floor and he did. According to Warren, he asked Officer Strawn if he was being detained or if he was free to go and Officer Strawn told him he was under arrest and put handcuffs on him. Warren testified that Officer Strawn did not explain the charges he intended to file, but told him that if he told the officer his real name and what he was doing there, the officer would not file charges. After complying, the handcuffs were removed.

. Our decision today does not foreclose Warren’s ability to file additional motions related to Officer Strawn's concession that he implied *344 amnesty for the theft of the trinket if Warren admitted to taking it.